IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CA No.: 3:20-cv-00540

| | | |
|---|---|---|
| DANIELLE CIRILLO on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | **PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT** |
| CITRIX SYSTEMS, INC., | ) ) | |
| *Defendant.* | ) ) ) ) ) ) ) | |

Plaintiff Danielle Cirillo ("Plaintiff"), by and through counsel, on behalf of herself and all others similarly situated (collectively "Plaintiffs"), hereby set forth this collective and class action against Defendant Citrix Systems, Inc. ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of Defendant's systemic, company-wide failure to compensate Plaintiffs for all hours worked and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, and in violation of statutory recordkeeping provisions.

2.      In order for an employee to be exempt from the FLSA overtime compensation requirements, Defendant must affirmatively establish that the employee performs duties that meet one of the exempt categories, that the employee is compensated on a salaried basis, and/or that the employee does not fall under some other exemption, based on the type of compensation

earned. However, throughout the relevant period, Defendant, a soft-ware development company, has maintained a corporate policy of misclassifying Plaintiffs as overtime exempt employees and failing to compensate Plaintiffs for all mandatory pre-shift and post-shift work. In particular, Defendant required Plaintiffs to report only scheduled shift times on timesheets and automatically deducting one hour for a "lunch break." Plaintiffs were forbidden from documenting (1) any time spent performing pre-shift tasks, such as turning on computers, logging into programs, and preparing their workstation for each shift; (2) time spent working during "lunch breaks," including, but not limited to, speaking with clients and going through demonstrations with prospective buyers; and (3) time spent working after scheduled shifts times, including, but not limited to, phone calls that occurred at various hours in the evening with prospective customers located in various time zones.

3. Defendant, through its managers and human resources representatives, was aware that Plaintiffs were completing the pre- and post-shift work and doing so without compensation. Defendant suffered or permitted, and in fact required Plaintiffs to complete such work without compensating Plaintiffs for the same.

4. Pursuant to Defendant's policy, Plaintiffs routinely only documented 40 hours of work per week, without accounting for work performed before and after each shift as well as during lunch. When such work is included, even those Plaintiffs who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without being compensated for the all hours work or compensated at the overtime rate for hours worked over 40 per week.

5. Throughout the relevant period, Defendant also maintained a corporate policy of underpaying and failing to lawfully compensate Plaintiffs at the appropriate overtime rates. Defendant issued monthly "commissions" to Plaintiffs, based on objective, nondiscretionary

metrics, including a fixed formula based on the percentage of sales reached relative to the set sales goals each month. Defendant, however, failed to take into account such commissions during overtime workweeks when calculating Plaintiffs' regular and overtime rates.

6. Defendant's practices of failing to compensate Plaintiffs for all hours worked and failing to compensate Plaintiffs at the appropriate overtime rate for overtime hours worked, violated Plaintiffs' rights under the FLSA and NCWHA.

7. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class in North Carolina:

> All individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past three (3) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift time; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks or who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

8. Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

9. Plaintiffs who elect to participate in this FLSA collective action seek compensation for all unpaid pre- and post-shift work performed for Defendant, including during lunch breaks, even though such lunch breaks were automatically deducted from the individuals' daily hours worked, at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

10. Plaintiff also brings this action, on her own behalf, and as a representative of

3

similarly situated individuals who performed work for or are employed by Defendant in North Carolina under the NCWHA. Plaintiff, who is a North Carolina resident and who worked for Defendant in North Carolina, asserts she and the putative class, who work or worked for Defendant in North Carolina, are entitled to compensation for all work performed for Defendant, whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate regular and overtime rate for all hours worked less than (40), in addition to, hours in excess of forty (40) per week respectively, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

11.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> All individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past two (2) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift times; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

12.     This action is also brought by Plaintiff individually to remedy Defendant's unlawful acts under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and wrongful discharge of Plaintiff.

13.     Defendant violated the law by interfering with Plaintiff's need for FMLA-protected medical leave, since Defendant failed to notify Plaintiff of her rights under the FMLA and discouraged Plaintiff from taking any leave of absence, including by informing her if she took the "leave of absence" it would result in a 70% reduction in pay. Defendant also retaliated against Plaintiff for engaging in protected activity, in violation of Section 15(A)(3) of the FLSA, North Carolina common law and public policy, by harassing Plaintiff and, ultimately, terminating

4

Plaintiff for engaging in protected activities, upon Plaintiff's complaints regarding Defendant's pay practices and by repeatedly dismissing Plaintiff's medical need to work from home as "a problem" and further knowingly causing Plaintiff emotional distress as a result of Plaintiff's manager's hostile work environment. Defendant did not act in good faith and with reasonable grounds to believe they were not violating the FMLA.

14. Plaintiff seeks all wages, salary, benefits, or other compensation denied to or lost by Plaintiff as a result of Defendant's FMLA violations and wrongful termination, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, and all other relief permitted by applicable law, pursuant to Section 107 of the FMLA, 29 U.S.C. § 2617, North Carolina common law, and Chapter 1D of the North Carolina General Statutes.

## PARTIES

15. Plaintiff Cirillo is an adult resident of North Carolina, residing at 2501 Jamboree Road, Apartment 204, Raleigh, North Carolina, 27613. She worked as an Inside Sales Representative for Defendant at its Raleigh, North Carolina location from approximately July 10, 2018 to January 30, 2020. Her scheduled shift was typically 8:30 a.m. through 5:00 p.m., Monday through Friday.

16. Defendant is an American, publicly traded multinational software-developing company, organized under Delaware law, headquartered in Florida, and has its principal place of business located at 851 West Cypress Creek Road, Fort Lauderdale, Florida 33309.

17. According to its website, Defendant operates sixty (60) offices in forty (40) countries, with over 400,000 organizations utilizing Defendant's self-developed and patented cloud-based software, desktop and application virtualization, and data sharing technologies.

18. For 2019, Defendant reported a total revenue of $3.01 billion at the 2020 Annual

5

Meeting of Shareholders.

19.     Upon information and belief, during the time period relevant to this action, Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Named and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## JURISDICTION AND VENUE

20.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*., and the FMLA, 29 U.S.C. § 2601, *et seq*.

21.     The United States District Court for the Western District of North Carolina has personal jurisdiction because Defendant conducts business in all areas of the state, including, but not limited to, Buncombe and/or Mecklenburg County, North Carolina, which is located within this District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), insomuch as Defendant conducts business within the Western District of North Carolina, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

23.     Additionally, the claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

24.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

25.     The evidence establishing liability for the causes of action will be similar, and

6

neither issue will predominate nor create confusion for a jury.

## COVERAGE

26. At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the FMLA, 29 U.S.C. § 2611(4), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

27. At all relevant times, Defendant operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

28. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

29. At all relevant times, Defendant has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

30. At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

31. Defendant employs over 8,100 employees worldwide, with more than 2,000 Inside Sale Representatives working at Defendant's Raleigh, North Carolina location.

32. According to its website, Defendant markets and licenses its products both directly and indirectly through value-added resellers, independent software vendors, value-added distributors, and original equipment manufacturers.

33. Upon information and belief, at all times material to this complaint, Defendant's

7

uniform approach throughout its operations in securing, assigning, monitoring, and compensating Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

34.     Defendant employs individuals in various positions, including, but not limited to, inside sales representatives, Software Engineers, and marketing positions.

35.     Regardless of job duties and position, Defendant misclassifies hourly, nonexempt employees as salaried-exempt, regardless of the employees' duties or hourly compensation.

36.     Defendant did not compensate Plaintiffs for all hours worked, including hours over forty (40) that were worked in a given workweek and did not a pay a premium rate of time- and one-half for such time worked.

### A.  Wage-Related Allegations – Unpaid Hours Worked

37.     Defendant schedules Plaintiffs to work eight (8) hour shifts, five (5) days per week, with a one (1) hour unpaid lunch break each day.  However, in order to meet Defendant's expectations, Plaintiffs are required to work between 50 and 65 hours per week

38.     For example, Plaintiff worked for Defendant as an inside sales representative ("Sales Representative"), or in similar positions, during the relevant time period. As a sales representative, Plaintiff the majority, if not all, of Plaintiff's work was performed at Defendant's Raleigh, North Carolina location.

39.     Sales Representatives communicate with current and prospective customers regarding products developed and offered by Defendant, including performing sales demonstrations to clients and prospective customers, wherein the representative walks the customer through the various features of Defendant's product and software. Sales Representatives may be assigned to a partners group, gross sales group, inbound group, or territory-based team. Regardless of the assigned "team," all Sales Representatives are subject to the same schedule and

8

performance-based expectations of Defendant.

40. Currently, Sales Representatives are compensated on an hourly basis. In addition to hourly wages, Sales Representatives receive a monthly, nondiscretionary commission based on the percentage of sales obtained relative to Defendant's set quota. For example, if a sales representative completes enough sales to reach 100% of the quota, the representative will receive 100% of the commission amount. If the sales representative exceeds the goal by 110%, the sales representative receives 110% of the commission amount. Commissions are paid at the end of each month, based on the sales quota achieved that month.

41. Sales Representatives are typically scheduled to work from 8:30 a.m. to 5:30 p.m., with a one-hour, unpaid lunch break. In order to meet sales goals and satisfactorily assist clients in various time zones, Sales Representatives are required to arrive to work prior to the start of their schedule shift, work through their unpaid "lunch break," and continue assisting and corresponding with clients after the end of their shift.

42. Specifically, prior to the start of each shift, as a Sales Representative, Plaintiff typically arrived ten (10) to fifteen (15) minutes early in order to begin logging onto various programs, including Workday and Coffee, read emails, and other tasks required to become work ready.

43. Defendant's policies and practices essentially required Sales Representatives to arrive to work prior to the start of the shift, in order to be work-ready and present for team meetings that begin promptly at 8:30 a.m.

44. Additionally, Sales Representatives are expected to continue working through their lunch breaks, as needed, in order to continue assisting a client or otherwise walking a prospective customer through a demonstration of Defendant's products. Approximately three (3) days per

9

week, Plaintiff was required to continue working through her "lunch break," in order to perform such tasks as demonstrations.

45.	At the end of each shift, Sales Representatives are rarely able to finish phone calls with clients, shut down their workstation, and leave at the scheduled end of the shift. During the relevant time period, Sales Representatives typically performed post-shift tasks, including but not limited to, manually shutting down computers, completing outstanding paperwork, sending emails, and speaking to and following up with clients and prospective customers.

46.	Given the work demands depended in large part on the needs of the clients and the volume of prospective customers, Sales Representatives could continue working for as much as an additional three (3) hours past their scheduled shift time.

47.	Additionally, because Defendant maintains clients across the globe, including in countries such as Australia, China, and India, Sales Representatives are also responsible for corresponding with customers in various time zones. In order to facilitate phone calls at a time convenient for foreign clients, Defendant requires Sales Representatives to conduct evening phone calls, either from the office or at home.

48.	Approximately one (1) to two (2) times per week, Plaintiff was required to take calls around 8:30 or 9:00 p.m. with foreign clients. Each foreign call typically lasted one (1) hour.

49.	In order to meet Defendant's sales quotas each month, Sales Representatives were required to work more than the scheduled forty (40) hour workweeks.

50.	During the first two weeks of each month, Plaintiff typically worked two hours after her scheduled shift ended, approximately three days each week. During these first weeks of the month, including time spent performing pre-shift work, working through her lunch break, and post-shift work, Plaintiff typically worked at least fifty (50) hours per week.

10

51.     During the last two weeks of each month, when the deadline to meet the sales quota was impending, Plaintiff typically worked three (3) hours after her scheduled shift ended, approximately three (3) days each week.  During these last two weeks of the month, including time spent performing pre-shift work and working through her lunch break, Plaintiff typically worked at least fifty-four (54) hours per week.

52.     Defendant, Plaintiff's managers, and the Human Resources Department were aware of the work being performed outside of the scheduled shift times.

53.     When Plaintiff began her employment with Defendant in January 2018, she was paid on a salary basis, $42,500 per year, plus commissions. At the time, Defendant classified Plaintiff as overtime exempt.

54.     Accordingly, Defendant did not require Plaintiff to track any of her hours worked or compensate Plaintiff for the additional hours worked beyond the scheduled forty (40) hours.

55.     In January 2019, Defendant's human resources manager as well as other department managers held a one-hour meeting with all inside sales representatives in the "stadium" of the Raleigh, North Carolina location.

56.     During this meeting, Defendant informed the Sales Representatives they would no longer be compensated on a salary basis but would be transitioned to hourly and would maintain the same commission structure.

57.     Defendant further instructed the Sales Representatives they would be required to begin completing timesheets.  To complete timesheets, Defendant ordered Sales Representatives only document their scheduled shifts on the timesheets.  For example, if a Sales Representative was scheduled to work from 8:30 a.m. until 5:30 p.m., the Sales Representative was only allowed to record the scheduled shift time, regardless of any additional hours worked.

11

58.     Understanding this new timekeeping policy would omit a significant number of hours worked from the timesheets, various sales representatives spoke up during the meeting and asked how to document the time worked outside the scheduled shifts, including pre-shift work, working through lunches, and post-shift work.

59.     Rather than address the ten (10) to thirteen (13) hours of inevitable overtime the sales representatives would be working but not documenting as a result of this policy, Defendant disregarded the questions, explaining "you will figure it out."

60.     Still, Defendant made clear only the scheduled shift times would be recorded and compensated. Sales Representatives were not permitted to correct their timesheets to reflect any time worked during the one-hour "lunch break."

61.     Defendant did not provide an explanation as to why they would not be classified as hourly employees.

62.     Following this meeting, Plaintiff was assigned an hourly rate of $20.43 per hour, consistent with Plaintiff's prior salary amount. In other words, despite Defendant transitioning Plaintiff from a salary to hourly, Plaintiff's duties remained the same and Plaintiff's income remained the same (apart from earned commissions).

63.     As a result of Defendant's policy, Plaintiff and other Sales Representatives were only compensated for scheduled shift times and did not receive compensation for any of the work performed outside of the schedule shift times.

64.     For example, Plaintiff typically worked at least fifty (50) to fifty-four (54) hours, though she was only compensated for forty (40) hours of work. In the aggregate, during her entire period of employment, Plaintiff was not paid a minimum of $28,9360.54 for the work Plaintiff performed outside of her scheduled shift.

12

65.     Defendant's failure to compensate for all hours worked has affected all Plaintiffs similarly.

**B. Unpaid Overtime—Commission**

66.     Typically, Plaintiffs were scheduled for and worked at least a full forty (40) hours per week, not including work performed outside of scheduled shifts, as described above.

67.     Plaintiffs were compensated at the regular hourly rate for scheduled shift times, but not for the undocumented required pre- and/or post-shift work described above.

68.     For example, because most Sales Representatives work scheduled shifts of at least forty (40) hours per week, this additional time spent performing necessary, work-related activities was nearly always overtime work, compensable at one and one-half (1.5) times the regular rate.

69.     Throughout the relevant period, Defendant has issued, as part of their compensation, monthly commissions to Sales Representatives, which are identified on wage statements as "commissions."

70.     Defendant's monthly commissions were nondiscretionary and were based on objective metrics pursuant to a formula used by Defendant.

71.     Despite such objective metrics and the fact that the commissions were calculated pursuant to a fixed formula, based on sales obtained, Defendant did not take into account such nondiscretionary commissions when calculating regular and overtime rates.

72.     Accordingly, the overtime rates paid by Defendant did not vary, regardless of the sum of call-center associates' regular earnings, nondiscretionary commissions, and regardless of the extent to which the nondiscretionary commissions would have increased the regular hourly rate.

73.     Plaintiff typically received between $2,500.00 and $5,000.00 in monthly commissions and regularly worked hours in excess of fifty (50) per week, but only received

13

compensation of her regular hourly rate ($20.43) for hours up to forty (40) each week, which did not compensate for any additional (overtime) hours worked or incorporate the amount of nondiscretionary commissions into earned overtime wages.

74. By failing to include commissions in calculating the regular rate of pay Plaintiffs receive for overtime purposes, Defendant reduces the cost of overtime in violation of federal and state wage and hour laws.

75. Defendant's failure to compensate at the appropriate rate for overtime work performed has affected Plaintiffs similarly.

76. At all times material to this complaint, Defendant's uniform approach throughout its operations in securing, assigning, monitoring, and compensating Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

**C. Individual FMLA Interference, Retaliation, and Common Law Related Facts**

77. Following the January 2019 meeting, beginning in February 2019, Plaintiff's manager began requiring Plaintiff to perform extra work and demonstrations. When Plaintiff complained about the extra work she was performing, and not receiving any additional compensation for the time spent performing such work, Plaintiff's manager would tell her she had to do it "because I said so."

78. When Plaintiff complained to Human Resources about the issues she was having with her manager, the HR director notified the manager of Plaintiff's concerns, which exacerbated the manager's hostile treatment of Plaintiff.

79. Plaintiff was required to continue working with the manager who unnecessarily ridiculed Plaintiff, overloaded Plaintiff with additional work, and criticized Plaintiff's work performance, despite Plaintiff regularly falling within the top five (5) sales representatives in the group, outselling the majority of the team, and being one of the only members of the team who

14

consistently received positive responses from clients.

80.     On multiple other occasions Plaintiff complained to Human Resources, explaining the extreme emotional distress, including high levels of stress and anxiety, (which Plaintiff had never experienced in the past), caused by Plaintiff's manager. To address Plaintiff's complaints, Human Resources would regularly order Plaintiff and the manager to have a meeting, wherein Plaintiff would be required to tell the manager directly the issues she was experiencing.

81.     During these meetings, Plaintiff would regularly be pushed to tears. Upon seeing the physical manifestation of Plaintiff's duress, the Human Resources Director informed Plaintiff she may need to take a leave of absence, given the emotional health concerns, but that if Plaintiff chose to take time off work, Plaintiff's pay would be reduced to 30% of Plaintiff's current pay. Specifically, Defendant did not advise or notify Plaintiff regarding her rights pursuant to the FMLA, or that she was eligible to take such leave.

82.     Given Defendant's failure to properly provide notification of the FMLA and Plaintiff's rights and obligations under the same, but on the contrary, learning of the decrease in compensation should she take a leave of absence,, Plaintiff did not inquire more about the leave of absence or any type of medical leave as she did not know FMLA leave existed or that she might be eligible to receive it, but rather requested instead to be transferred to a different team under a different manager, but Defendant refused.

83.     In June 2019, Plaintiff suffered an accident in the workplace, which resulted in persistent knee and shoulder injuries.

84.     Since the injury, Plaintiff has been visiting a doctor for regular medical treatment twice a week.

85.     After filing for workers compensation and beginning treatment, Plaintiff noticed

15

her knee would become swollen at the beginning of her shift, due to the long-distance Plaintiff was required to walk from her parking spot to her workstation.

86.     Upon learning of Plaintiff's workplace injury, Plaintiff's resulting need for regular doctor's appointments for treatment, and Plaintiff's inability to work in the office, Defendant did not inform Plaintiff of her rights under the FMLA, especially as it related to her workplace injury.

87.     On October 3, 2019, Defendant approved Plaintiff's accommodation request to be permitted to work half days, from home, until October 2019. The same accommodations were later approved through February 10, 2020.  However, such accommodations had nothing to do with Plaintiff's rights pursuant to the FMLA.

88.     However, while working from home, Plaintiff continued working the same scheduled shifts, as well as performing the same pre- and post-shift work.

89.      While working from home, Plaintiff continued meeting and/or exceeding Defendant's sales quotas.  Meanwhile, in the office, Plaintiff's manager would discuss Plaintiff's circumstances with members of Plaintiff's team, saying Plaintiff did not want to work or come back to work.

90.     To ensure Plaintiff was actually working from home (despite Plaintiff continuing to exceed sales expectations), Plaintiff's Manager required Plaintiff to call and check in with the manager as well as run the Manager through practice demonstrations.  Such additional tasks took away from Plaintiff's time to perform her standard job duties, further requiring additional work outside her scheduled shift.

91.     Additionally, Plaintiff's manager would repeatedly tell Plaintiff that Plaintiff is "taking advantage of the situation" and that Plaintiff's working from home "was a problem."

92.     Pursuant to Plaintiff's treating physician's recommendation, Plaintiff, still suffering

from injuries sustained at work, requested the work-from-home accommodation be extended through February 17, 2020.

93.     On January 24, 2020, Defendant approved the request, with modifications. Specifically, Defendant authorized Plaintiff to continue working from home but would now formally require Plaintiff to continue working during "core business hours," despite Plaintiff being able to work the previously approved "half days."

94.     Nevertheless, five days later, on January 30, 2020, Plaintiff was terminated from her position.

95.     When discussing Plaintiff's termination with other employees, Plaintiff's manager explained Plaintiff was terminated because of her injury and Plaintiff's need to work from home.

96.     During the month of January 2020, Plaintiff had procured enough sales to exceed the sales quota and earn the commission.

97.     Defendant has yet to compensate Plaintiff for all sales procured by Plaintiff during January 2020.

## FLSA COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiff brings the First Cause of Action of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

99.     Members of the FLSA class are similarly situated.

100.    Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

101.    There are numerous (in excess of 2,000) similarly situated current and former Employees that fall within the scope of the aforementioned FLSA class.

17

102.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

103.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

104.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

105.     Named Plaintiff consents in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Named Plaintiff's signed consent form is filed with the Court as Exhibit A this Complaint. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

106.     Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## RULE 23 NCWHA CLASS ACTION ALLEGATIONS

107.     Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

108.     Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises at least 2,000 individuals.

109.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common

18

questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

a. Whether pre-shift work, working "lunch breaks," and post-shift work performed by putative NC Class Members is compensable under the NCWHA;

b. Whether Defendant's failure to compensate putative NC Class Members for all hours worked is in violation of the NCWHA; and

c. Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

110. <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative NC Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all hours worked and for hours worked in less than and in excess of forty (40) each week at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative NC class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative NC class member. Plaintiff and members of the proposed NC class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

111. <u>Adequacy of Representation</u>: Plaintiff is able to fairly and adequately protect the interests of all members of the proposed NC class, and there are no known conflicts of interest

between Plaintiff and members of the proposed class. Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

112. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

113. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment,

future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

114. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

## FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act
### 29 U.S.C. § 201, *et seq.*
### Brought by Plaintiff on Behalf of Herself and all Similarly Situated Employees

115. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

116. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

117. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Plaintiff, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

118. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

119. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

120. At all relevant times, Defendant, pursuant to its policies and practices, failed and

21

refused to pay for all hours worked to Plaintiffs, including for required, pre- and post-shift work performed by Plaintiffs.

121. At all relevant times, Defendant, pursuant to its policies and practices, failed to incorporate nondiscretionary commissions into Plaintiffs' hourly overtime rate, in violation of 29 C.F.R. §§ 778.208, 778.209(a).

122. As evidenced by Defendant's reclassifying Plaintiffs as hourly employees, rather than salaried, Defendant was aware of its responsibilities under the FLSA, but deliberately failed to comply.

123. During the relevant time period, Defendant actively evaded its obligation to maintain accurate time records of work performed by Plaintiffs, in order to escape its ultimate obligation to compensate Plaintiffs for all hours worked. Defendant was aware Plaintiffs regularly performed work in excess of forty (40) hours each week, but through concerted efforts, Defendant prevented Plaintiffs from reporting and documenting the same.

124. Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that Defendant knew Plaintiffs were performing work in excess of the time documented, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

125. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest,

22

and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**
**Brought by Plaintiff on Behalf of Herself and all Similarly Situated Employees**

126.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

127.    At all relevant times, Defendant has employed, and/or continue to employ, Plaintiffs within the meaning of the NCWHA.

128.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

129.    Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

130.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

131.    Defendant employed Named Plaintiff, and similarly situated employees, within the State of North Carolina.

23

132. Defendant's Employee Handbook promises non-exempt Employees they will be compensated the premium rate of one-and-one-half times their regular hourly rate for all worked in excess of forty (40) in one week.

133. Plaintiffs' paystubs document and inform Plaintiffs' of their hourly rates.

134. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for required pre- and post-shift work performed by Plaintiffs, and at the appropriate overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

135. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6 and 95-25.13.

136. As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

137. Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of their obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

138. As a result of Defendant's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

**THIRD CAUSE OF ACTION**
**Violation of the Family Medical Leave Act**
**29 U.S.C. § 2601,** *et seq.*
**On Behalf of Plaintiff Cirillo**

139. Plaintiff incorporates by reference all preceding paragraphs as if the same were

24

repeated here verbatim.

140.     Among the stated purposes of the FMLA, under 29 U.S.C. § 2601(b)(1) and (2), are to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity," and "to entitle employees to take reasonable leave for medical reasons for him or herself, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."

141.     The FMLA, pursuant to 29 U.S.C. § 2615(a)(1), prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]."

142.     Further, an employer must provide an employee of the eligibility to take FMLA leave once the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason. *See* 29 CFR § 825.300 (b)(1).

143.     Refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulation to avoid responsibilities under the FMLA are qualifying examples of forbidden interference with an employee's right to seek FMLA leave. *See* 29 C.F.R. 825.220(b).

144.     At all relevant times, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2), since she had been employed for at least twelve months by Defendant, and she had provided at least 1,250 hours of service with Defendant during the preceding twelve-month period.

145.     At all relevant times, Defendant was an "employer" engaged in "commerce or in any industry or activity affecting commerce," which employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

25

146.     While addressing Plaintiff's complaints regarding the hostile work environment created by her manager and the resulting emotional distress, Defendant acknowledged the impact such distress was having on Plaintiff's emotional and mental health and identified such as a serious health condition, pursuant to 29 C.F.R. §§ 825.113-115, offering Plaintiff the ability to take a leave of absence. However, despite inherently acknowledging Plaintiff's condition may qualify for FMLA-qualifying leave, Defendant did not mention FMLA specifically nor provide Plaintiff instruction on the process to apply for FMLA leave or notice of Plaintiff's rights and responsibilities under the FMLA.  Rather, Defendant discouraged Plaintiff from taking *any* leave by only explaining should she take a leave of absence for her medical concerns, Plaintiff's wages would be reduced.  Defendant's intentionally limited information regarding Plaintiff's leave options served only to manipulate Plaintiff's decision to not seek such leave.

147.     Similarly, following Plaintiff's injury at work, Defendant did not inform Plaintiff of her rights under the FMLA as it related to any leave needed for medical treatment for or rehabilitation of her work-related injuries.  Again, Defendant reiterated leave would result in reduced compensation and required Plaintiff to continue working the same hours worked prior to her injury.

148.     While Plaintiff provided notice to Defendant of her serious health conditions and subsequently known need for FMLA-qualifying leave, Defendant failed to provide eligibility notice under 29 C.F.R. § 825.300(b), rights and responsibilities notice under 29 C.F.R. § 825.300(c), or designation notice under 29 C.F.R. § 825.300(d).

149.     Moreover, rather than offer Plaintiff the necessary leave to treat her medical conditions, both directly related to her employment with Defendant, Defendant retaliated against Plaintiff for her FMLA-related needs and terminated Plaintiff because her "working from home

26

was a problem," despite Defendant's entire business surrounding around the development of software and desktop virtualization that facilitates remote work.

150.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages. Defendant's violations entitle Plaintiff to all wages, salary, benefits, or other compensation denied to or lost by Plaintiff, monetary losses sustained, an equal amount of liquidated damages, interest at the prevailing rate, and attorneys' fees and costs. including back pay, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and 2617(a)(1)(A)(3).

151.    The FMLA interference and retaliation violations of Defendant, as described herein, was not in good faith, and Defendant did not have reasonable grounds for believing that its acts or omissions were not a violation of the FMLA, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

### FOURTH CAUSE OF ACTION
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**

152.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

153.    It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. §§ 143-422.2, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from retaliatory treatment in their employment. N.C. Gen. Stat. § 95-243.

154.    The termination of Plaintiff's employment, resulting from her suffering from FMLA-qualifying conditions as well as challenging Defendant's compensation practices, was wrongful as against the public policy of the State of North Carolina. *See*

155.    Such termination proximately caused Plaintiff to suffer emotional distress and other

losses, as described above. Accordingly, Plaintiff is entitled to compensatory damages under North Carolina law and interest pursuant to N.C. Gen. Stat. § 24-5(b).

156. Defendant's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to putative damages pursuant to Chapter 1D of the North Carolina General Statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representatives of all those similarly situated under the FLSA collective action;

2.     At the earliest possible time, issue notice of this collective action, or allow Named Plaintiffs to do so, to all individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past three (3) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift time; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks or who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received.;

3.     Issue an Order certifying this action as a class action under the NCWHA, and designate Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class and designate the below signed counsel as class counsel;

4.     Award Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Plaintiffs and the class as provided by the FLSA, 29 U.S.C. § 216(b) and award Plaintiff and employees in the North Carolina class actual damages for unpaid wages and liquidated damages equal in amount as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1);

5.     Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (d);

6.     Award Named Plaintiff all wages, salary, benefits, or other compensation denied to or lost by Named Plaintiff, and monetary losses sustained, as a result of Defendant's unlawful actions under the FMLA;

7.     Award Named Plaintiff interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii);

8.     Award Named Plaintiff liquidated damages, as provided under 29 U.S.C. § 2617(a)(1)(A)(iii);

9.     Award Named Plaintiff attorneys' fees and costs, as provided under 29 U.S.C. § 2617(a)(3);

10.     Award Plaintiff all compensatory, consequential, and punitive damages due as a result of Defendant's unlawful acts;

11.     Award Named and Putative Plaintiffs further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all issues so triable.

Respectfully submitted this September 29, 2020

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*

30