IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

DANIELLE CIRILLO, on behalf of herself )
and all others similarly situated, )
)
     *Plaintiff,* )
)
     v. )     CA No.: 3:20-cv-00540-RJC-DSC
)
CITRIX SYSTEMS INC., )
)
     *Defendant.* )
)
_____ )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER UNDER 28 U.S.C. § 1406(A) OR, ALTERNATIVELY, TRANSFER UNDER 28 U.S.C. § 1404(A)

# TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................2

III.   STANDARD OF REVIEW .........................................................................6

IV.   ARGUMENT ...............................................................................................7

      A.     Defendant's Reliance on Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) Fails Because Venue is Proper in this District............................7

             1.     Venue is Proper Because Defendant is a Resident of this District. ............8

             2.     Venue is Proper Because a Substantial Part of the Events or Omissions Giving Rise to Plaintiff's Claims Occurred in the Western District. ....................................13

      B.     Defendant's Reliance on 28 U.S.C. § 1404(a) Fails Because This District is the Most Convenient Forum for This Action. ...................................................15

             1.     Plaintiff's Choice of Forum Should be Given Great Weight....................16

             2.     Convenience of Witnesses and Parties Does Not Favor Transfer. ............17

             3.     Defendant Fails to Identify Any Witnesses Who are Unwilling to Testify in This District or Whose Testimony Cannot be Adequately Preserved Via Depositions. .........................................19

             4.     Factors Four Through Eight Do Not Support Transfer............................20

             5.     Because the State of North Carolina And This District Are Home to This Controversy, There is a Strong Interest in Adjudicating It...........21

             6.     No Conflict of Laws Exists........................................................................22

             7.     The Interests of Justice Favor Keeping Case in This District...................22

V.     CONCLUSION...........................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Abbot Grp., LLC v. Hobie Cat Co.*,
    2007 WL 1853413, at *3 (W.D.N.C. June 26, 2007)...................................................... 18

*Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.*,
    2020 WL 4913280 (E.D.N.C. Aug. 20, 2020) ................................................................. 6

*Aggarao v. MOL Ship Mgmt. Co.*,
    675 F.3d 355 (4th Cir. 2012) ......................................................................................... 6

*Alix v. Shoney's, Inc.*,
    1997 WL 66771 (E.D. La. Feb. 18, 1997)...................................................................... 17

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707, (4th Cir.2002) ......................................................................................... 9

*ARCpoint Fin. Grp., LLC v. Blue Eyed Bull Inv. Corp.*,
    2018 WL 2971205, (D.S.C. June 13, 2018) ................................................................... 7

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013) ........................................................................................................ 8

*Bourne v. McNealy-Minor*,
    2020 WL 1491549 (E.D.N.C. Mar. 27, 2020)...................................................... 7, 17, 19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................................... 13

*Carolina Recording Sys., LLC v. Posey*,
    2020 WL 697459 (W.D.N.C. Feb. 11, 2020).................................................................. 6

*Cavalo Growers of Cal. V. Generali Belgium*,
    632 F.2d 963 (2d. Cir. 1980) ....................................................................................... 23

*Chung v. NANA Dev. Corp.*,
    783 F. 2d 1124 (4th Cir. 1986) .................................................................................... 13

*Collins v. Straight, Inc.*,
    748 F.2d 916 (4th Cir. 1984)........................................................................................ 16

*Consulting Engineers Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009)........................................................................................ 13

Case 5:21-cv-00088-BO   Document 14   Filed 12/08/20   Page 3 of 31

*Daramic, LLC v. Entek Int'l, LLC*,
2012 U.S. Dist. LEXIS 62061 (W.D.N.C. May 2, 2012)...................................7

*Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*,
719 F. Supp. 446 (W.D.N.C. 1989)...................................16, 21

*Elec. Sys. Prot., Inc. v. Innovolt, Inc.*,
2010 WL 2813503 (E.D.N.C. July 14, 2010)...............................19

*Freeman v. Hoffman-LaRoche, Inc.*,
2007 U.S. Dist. LEXIS 23132 (S.D.N.Y. Mar. 21, 2007)...........................22

*Funke v. Life Fin. Corp.*,
2003 WL 194204 (S.D.N.Y. Jan. 28, 2003 ...................................23

*Guerrero v. Habla Communicaciones*,
2005 U.S. Dist. LEXIS 41358 (S.D. Tex. Mar. 15, 2005) ...........................23

*Hardee's Food Sys., Inc. v. Rosenblatt*,
44 F. Supp. 2d 767 (E.D.N.C. 1998) ...........................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ...................................9

*Hoffman v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. Oct. 22, 1997) ...................................24

*Hunter v. Mountain Commerce Bank*,
2016 WL 5415761 (M.D.N.C. Sept. 28, 2016) ...........................15

*Int'l Shoe Co. v. Washington*,
326 U.S. 310, 316 (1945) ...................................13

*Iragorri v. United Technologies Corp.*,
274 F.3d 65 (2d Cir. 2001) ...................................23

*Longo v. Trojan Horse Ltd.*,
992 F. Supp. 2d 612 (E.D.N.C. 2014) ...................................16, 19

*Mitrano v. Hawes*,
377 F.3d 402 (4th Cir. 2004) ...................................13, 14

*NOA, LLC v. Atl. Clothing, LLC*,
2014 WL 3667230 (E.D.N.C. July 22, 2014)...................................7, 15, 17, 18

iv

*Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.*,
    933 F.Supp. 507 (M.D.N.C.1996) ..................................................................... 15

*Roy v. Home Depot, U.S.A., Inc.*,
    2018 WL 6588514, (E.D.N.C. July 20, 2018) ............................................... 7, 8

*Sales Consultants of Cary, LLC v. CareerBuilder, LLC*,
    2008 WL 11381887 (E.D.N.C. Dec. 2, 2008) .................................................. 22

*Salinas v. O'Reilly Auto., Inc.*,
    358 F. Supp. 2d 569 (N.D. Tex. 2005) ............................................................ 17

*SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*,
    2020 WL 1863292, at *2 (D. Md. Apr. 14, 2020) ............................................. 7

*Shaw v. Apple, Inc.*,
    2018 WL 401541 (W.D.N.C. Jan. 12, 2018) .................................................... 17

*Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*,
    567 F. Supp. 2d 799 (M.D.N.C. 2008) ............................................................ 20

*Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*,
    241 F. Supp. 3d 708 (E.D. Va. 2017) ................................................................ 9

*Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*,
    473 F. Supp. 2d 666 (M.D.N.C. 2006) ....................................................... 16, 20

*Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*,
    2020 WL 2086188 (M.D.N.C. Apr. 30, 2020) ................................................ 19

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) ........................................................................... 15

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ............................................................................. 9

*Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp.*,
    753 F. Supp. 1315 (W.D.N.C. 1990) ................................................................. 7

*WCC Cable, Inc. v. G4S Tech. LLC*,
    2017 WL 6503142 (W.D. Va. Dec. 15, 2017) .................................................. 6

*Whitmire v. S. Farm Bureau Life Ins. Co.*,
    5:20-CV-000018-M, slip op. (E.D.N.C. May 20, 2020) ................................. 16

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................................ 13

*WPB Partners, LLC v. Old Republic Nat. Title Ins. Co.*,
    2013 WL 395112 (E.D.N.C. Jan. 31, 2013) ........................................................ 16, 20

*Zippo Mfg. Co. v. Zippo Dot Com. Inc.,*
    952 F.Supp. 1119 (W.D.Pa.1997) ....................................................................... 9, 10

**Statutes**
28 U.S.C. § 1391(b) ................................................................................................ passim

28 U.S.C. § 1391(c) ......................................................................................................... 8

28 U.S.C. § 1404(A) .................................................................................................. 2, 15

28 U.S.C. § 1406(A) ............................................................................................... passim

**Rules**
Fed. R. Civ. P. 12(b)(3) ............................................................................................... 6, 7

Fed. R. Civ. P. 23 ........................................................................................................... 16

vi

## I.    INTRODUCTION[1]

Plaintiff Cirillo filed a lawsuit in the state of North Carolina where she resides, in the state where the conduct she complains of occurred.  The forum is also convenient for the opt-in Plaintiff, putative Plaintiffs and Rule 23 class members ("Plaintiffs") who either worked or have worked as Inside Sales Representatives in the State of North Carolina.  Citrix feigns surprise at Plaintiff's choice of forum and filed a motion to transfer venue premised on the notion that "Plaintiff's claims do not have *any* connection to the Western District of North Carolina or its Charlotte Division."  *See* Dkt. 12-1 at 1.  In other words, even though Citrix's principal place of business is Fort Lauderdale, Florida, and Citrix conducts business across the entire country, including throughout the state of North Carolina, Citrix contends it can only be sued in the Eastern District, rather than a mere *two hours* away in the Western District of North Carolina, simply because it has an office in Raleigh, North Carolina. However, the Fourth Circuit has repeatedly rejected this notion, and instead protects Plaintiff's reasonable choice of forum.  The factors to be considered on a motion to dismiss or transfer venue dictate that Defendant's motion should be denied in its entirety, and this lawsuit should remain in the Western District of North Carolina.

---

[1] In support of her Response, Plaintiff submits Copies of Plaintiff's Earning Statement, attached hereto as Exhibit 1; Plaintiffs' Offer of Employment Letters, attached hereto as Exhibit 2; Citrix's LinkedIn Advertisement for Jobs in Charlotte, NC, attached hereto as Exhibit 3; Screenshots, of Citrix's *fully* Interactive Website, including the relevant URLs, attached hereto as Exhibit 4; information on Citrix's Statewide IT Contract, 208X with the state of North Carolina, selling to and servicing local governments and municipalities throughout the state, statewide university systems, statewide community college systems, and other governmental entities, attached hereto as Exhibit 5; the Declaration of Named Plaintiff Danielle Cirillo, attached hereto as Exhibit 6 with corresponding attachments of Citrix's Human Resource personnel and directors throughout the country; the Declaration of opt-in Plaintiff Sabrina Stiles, attached hereto as Exhibit 7; a copy of Citrix's Code of Conduct with Helpline and Office Located in Charlotte, North Carolina, attached hereto as Exhibit 8; and an excerpt from the Administrative Office of the United States Courts, *U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2020), attached hereto as Exhibit 9.

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her complaint alleging collective/class action claims pursuant to Fair Labor Standards Act ("FLSA") and North Carolina Wage and Hour Act ("NCWHA") violations, in addition to, individual Family Medical Leave Act ("FMLA") and Retaliatory Employment Discrimination Act ("REDA") claims on September 29, 2020.  *See* Dkt. 1. Plaintiff filed her First Amended Complaint ("FAC") on October 1, 2020. *See* Dkt. 8.  On October 21, 2020, Defendant requested a twenty-one (21) day extension of time, to file its Answer or otherwise respond to Plaintiffs' FAC.  *See* Dkt. 10.  On November 13, 2020, Defendant filed its Motion to Dismiss or Transfer Under 28 U.S.C. § 1406(A) or, Alternatively, Transfer Under 28 U.S.C. § 1404(A).

Named Plaintiff Danielle Cirillo lives in Raleigh, North Carolina, and worked for Citrix in Raleigh, North Carolina.  Similarly, opt-in Plaintiff Sabrina Stiles currently lives in Colorado, but also worked for Citrix in North Carolina. Plaintiffs and Rule 23 class members will be key witnesses who either live within the State of North Carolina or elsewhere.  They will testify how they and their co-workers were paid, the number of hours per week they typically worked, and the nature of the work performed, including contacting existing clients and potential customers throughout the world.  Additionally, because this is collective/class action involving over 2,000 Sales Representatives affected by Citrix's corporate timekeeping and pay practices, including, but not limited to, the commissions policies, and Citrix's corporate office located in Fort Lauderdale, Florida, Plaintiffs anticipate that many of Citrix's corporate officials designated to speak on Citrix's standard pay, timekeeping, and human

resources policies will be located in Florida, California, or Oregon;[2] thus, many of these depositions will be conducted in their home state or North Carolina.[3]

Additionally, Citrix not only has employees in Raleigh, but also hires in Charlotte, North Carolina. Citrix describes itself as the following:

> At Citrix, **we believe work is not a place**, **but rather a thing you do**. Our technology revolves around this core philosophy. **We are relentlessly committed to helping people work and play from anywhere, on any device**. Innovation, creativity and a passion for ever-improving performance drive our company and our people forward. We empower the original mobile device: YOU!
> . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . .
> Citrix is a cloud company that enables mobile workstyles. **We create a continuum between work and life by allowing people to work whenever, wherever, and however they choose**. Flexibility and collaboration is what we're all about.

*See* Ex. 3.

In light of Citrix's "core philosophy," Citrix maintains partnerships with Citrix Remote Managed Service providers throughout North Carolina, for customers who purchase and implement the Citrix technology. *See* Ex. 4-A.[4] For example, one such partner, Wincourse, based in Charlotte, highlights the praise from Citrix customers: **"***When we engaged Wincourse we were looking for a [p]artner that we could outsource our Citrix Support. We needed a company who was proactive and could help us realize the true value we were looking for when we originally purchased and implemented the Citrix technology."* *See id.* Additionally, Citrix has procured a statewide contract with the North Carolina

---

[2] Indeed, Defendant affirms none of the Raleigh-based Human Resources personnel are officers of Citrix who would be authorized to speak on behalf of Defendant's compensation policies promulgated by corporate officials. *See* Dkt. 12-2, ¶ 14.

[3] *See* Ex. 1, Plaintiffs' Earning Statements; Ex. 2, Plaintiff's Offer Letter; *see also* Ex. 3, Citrix Job Posting in Charlotte, NC.

[4] Additionally, see Defendant's interactive website where visitors may "Request for Citrix Expert or Salesperson," Ex. 4; *see also* Dkt. 8, ¶ 39 ("Sales Representatives may be assigned to a partners group.").

3

Department of Information Technology ("DIT"), so Citrix technology and software are available to the North Carolina University System and its member campuses, Instructional components of the Department of Public Instruction (DPI), Instructional components of the North Carolina Community College System, as well as local (municipal and county) governments.[5] To that end, Plaintiffs are/were employed to consistently sell Citrix products all over North Carolina, the country, and globally.

Indeed, while there are Sales Representatives physically located in Raleigh, as stated above, Citrix maintains a presence throughout North Carolina (in large part through the services provided by Sales Representatives), but its corporate policies/practices relating to pay and timekeeping are located in its corporate office in Fort Lauderdale, and high level HR Managers are located in Florida, California or Oregon. For example, when Plaintiff Cirillo received her offer of employment letter, she was required to contact Alyssa Reeder, (Citrix's Shared Services Representative), located in the Miami/Fort Lauderdale area.[6] According to Ms. Reeder's LinkedIn page, she assists the business units in assigned areas of Employment, Benefits, Employee Relations, Employment Status Change, New Hire Onboarding, Talent Acquisition, Immigration (Global Mobility), Compliance, HR Systems, Reporting and Auditing. *See* Ex. 6. Similarly, according to emailed communications between Named Plaintiff Cirillo and Rochelle Crow, (Senior Employee Relations Manager for Defendant), Ms. Crow was responsible for approving Plaintiff Cirillo's FMLA leave. *See id*. Ms. Crow is located in Santa Barbara, California. *See* Ex. 6, Cirillo Decl., ¶ 31.

Likewise, Lindsey Scheller, Senior Human Resources Generalist, was also copied on

---

[5] *See also* Ex. 5, CITRIX Statewide IT Contract.
[6] *See* Ex. 6, Cirillo Decl., ¶ 31; *see also* Ex. 7, Stiles Decl., ¶ 3.

4

many emailed communications with Named Plaintiff and is also located in the Miami/Fort Lauderdale area.[7]  *See* Ex. 6-E.   Finally, Anthony Ames, is an Employee Relations HR Manager, located in Portland Oregon, who was responsible for investigating Named Plaintiff's concerns regarding retaliation.  *See* Ex. 6, ¶ 31.

Simply put, despite Citrix's assertions to the contrary, Citrix has strong business relationships all over North Carolina and elsewhere, due in large part, to Plaintiffs' efforts, selling Citrix's products in North Carolina and *not* just the Eastern District.   Additionally, Citrix's own website engages users and customers by allowing visitors of the website to (1) find targeted, local Citrix partners, who provide Citrix services, including in this district, (2) request the assistance of a Sales Representative; and/or (3) purchase Citrix products directly. *See* Ex. 4.  As such, since Citrix's corporate officials are not even located in North Carolina, the Eastern District is *not* the only appropriate or proper venue for this matter, or even the most convenient.  In fact, if this matter were transferred to the Eastern District, there is no guarantee it would be assigned to a district court judge in Raleigh.[8]  Therefore, Plaintiff's lawsuit should

---

[7] According to Ms. Scheller's LinkedIn page, the Senior HR Generalist's goal is to provide programs and practices in a manner that makes it easy to do business, while maintaining high customer satisfaction and ensuring consistency and compliance; partner with the HR team and management to formulate business plans, staffing objectives and human resource guidelines for domestic and international customer groups; assist in the support and development of competency models and career/learning roadmaps for job families; participate in the preparation or quarterly and annual employee performance evaluations summaries; assist with activities and projects required to support and drive a variety of HR initiatives and special projects; assist in the prioritization of employee-related issues and planning for improvements; provide management with ongoing consultation and development on performance management tools and solutions; and facilitate the ongoing performance management review process. *See* Ex. 6-E, Scheller's LinkedIn Profile.

[8] As Plaintiffs' counsel litigate in all North Carolina judicial districts, Plaintiffs understand the judge assigned to the matter dictates the location where the case will be litigated.  As the Eastern District maintains several active courthouses, some judges are located in New Bern, while others are located in Wilmington, Elizabeth City, or Greenville, North Carolina.  Contrary to Defendant's assertion, there is no "Raleigh Division."  Ultimately, if this case were assigned to any one of these judges outside of Raleigh, the parties could be required to travel up to three (3) hours away from Raleigh in lieu of Charlotte and to towns with small, regional airports, if any airport at all.  As such, Defendant's motion to dismiss or transfer the matter to the Eastern District makes little logical sense.

remain in this District.

## III.  STANDARD OF REVIEW

Discussion of Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) requires reference to the applicable venue statute, 28 U.S.C. § 1391(b), the general federal venue statute.   These provisions provide a tripartite framework through which courts may determine whether venue is wrong or improper and whether dismissal or transfer is required. *See Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc.,* No. 5:20-CV-46-M, 2020 WL 4913280 (E.D.N.C. Aug. 20, 2020).  First, Fed. R. Civ. P. 12(b)(3) permits a litigant to move for dismissal when venue is "improper;" second, and similarly, § 1406(a) states that where "venue [is] in the wrong division or district" the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought;" finally, § 1391(b), the general federal venue statute, establishes where venue is proper.  *Id.*   "A court may only invoke Section 1406(a) when venue is 'wrong' under Section 1391(b)—that is, a district other than those districts in which Congress has provided by its venue statutes that the action may be brought." *See WCC Cable, Inc. v. G4S Tech. LLC*, No. 5:17-CV-00052, 2017 WL 6503142, at *5 (W.D. Va. Dec. 15, 2017).

The burden is on the plaintiff to demonstrate that venue is proper. *See Carolina Recording Sys., LLC v. Posey*, No. 3:19-CV-477-MOC-DCK, 2020 WL 697459, at *3 (W.D.N.C. Feb. 11, 2020).  The Court may consider evidence outside the pleadings when ruling on a challenge to venue under Rule 12(b)(3).  *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 (4th Cir. 2012). "Like a motion to dismiss . . . in deciding a motion to dismiss [for  improper venue], *all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." SAMi-Systematic Analysis Mgmt.,*

6

*Inc. v. Omnivere Acquisitions, LLC*, No. CV RDB-19-2904, 2020 WL 1863292, at *2 (D. Md. Apr. 14, 2020). "A plaintiff need only make a prima facie showing of proper venue in order to defeat a motion to dismiss." *ARCpoint Fin. Grp., LLC v. Blue Eyed Bull Inv. Corp.*, No. 6:18-CV-00235-AMQ, 2018 WL 2971205, (D.S.C. June 13, 2018); *see also Roy v. Home Depot, U.S.A., Inc.*, No. 7:17-CV-239-BO, 2018 WL 6588514, (E.D.N.C. July 20, 2018) ("plaintiff must make a prima facie showing of jurisdictional basis").

Additionally, a defendant seeking transfer under Section 1404(a) faces an uphill battle. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Bourne v. McNealy-Minor*, No. 7:19-CV-236-FL, 2020 WL 1491549, at *5 (E.D.N.C. Mar. 27, 2020). Transfer is inappropriate when it would "simply shift the inconvenience from one party to another." *NOA, LLC v. Atl. Clothing, LLC*, No. 5:14-CV-100-FL, 2014 WL 3667230, at *8 (E.D.N.C. July 22, 2014). It is the defendant's burden to show "(1) more than a bare balance of convenience in [its] favor and (2) that a transfer does more than merely shift the inconvenience." *See Daramic, LLC v. Entek Int'l, LLC*, No. 3:11CV676-FDW-DSC, 2012 U.S. Dist. LEXIS 62061, at *7-8 (W.D.N.C. May 2, 2012); *see also Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp.*, 753 F. Supp. 1315, 1322 (W.D.N.C. 1990) (noting that "if the equities lean but slightly in favor of the defendant after all factors are considered," transfer is not appropriate).

## IV.   **ARGUMENT**

### A. Defendant's Reliance on Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) Fails Because Venue is Proper in this District.

Defendant initially invokes Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), both of

7

which require dismissal or transfer of any case filed in the "wrong division or district." 28

U.S.C. § 1406(a). Under Section 1406(a), a "wrong" venue is one that is improper under 28

U.S.C. § 1391(b). *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571

U.S. 49, 55-56 (2013). As relevant, venue is proper under Section 1391(b) in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; *or*

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b)(1)-(2). Here, venue in this District is proper under the first two prongs, although

either prong would suffice. Defendant's reliance on Section 1406(a) therefore fails.

1.    <u>Venue is Proper Because Defendant is a Resident of this District.</u>

Defendant's argument under Section 1406(a) fails because venue is proper in this

District under Section 1391(b)(1). This section provides that venue is proper in "a judicial

district in which any defendant resides or the judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2).   For

purposes of determining venue, a defendant corporation shall be deemed to reside in any

judicial district in which that defendant is subject to the court's personal jurisdiction with

respect to the civil action in question. *Id.* at § 1391(c)(2).   *See Roy,* No. 7:17-CV-239-BO,

2018 WL 6588514, at *1.   In determining whether *specific* jurisdiction exists, we consider (1)

the extent to which the defendant has purposefully availed itself of the privilege of conducting

activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at

8

the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711–12 (4th Cir.2002), *cert. denied,* 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003); *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To establish general personal jurisdiction, the defendant's activities in the state must have been "continuous and systematic." *ALS Scan,* 293 F.3d at 712; *see Helicop-teros,* 466 U.S. at 414 & n. 9, 104 S.Ct. 1868.

Additionally, the Fourth Circuit has "adopted and adapted" the sliding scale model first articulated in *Zippo Mfg. Co. v. Zippo Dot Com. Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) to guide the inquiry into whether, in posting its website, defendants [have] directed [their] activities to the forum state in a manner sufficient to establish personal jurisdiction. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (finding personal jurisdiction existed where the nature of the repeated interaction between the defendant's website and the visitor was *a commercial relationship*). Instructively, personal jurisdiction exists when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* (citing *ALS Scan*, 293 F.3d at 713-14*; see also Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 715–16 (E.D. Va. 2017). If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *ALS Scan*, 293 F.3d at 713-14 (quoting *Zippo*, 952 F.Supp. at 1124). At the other end of the scale or continuum are passive websites that simply put information on the Internet that forum users can access, and thus are

9

typically not a basis for exercising personal jurisdiction. *Zippo*, 952 F.Supp. at 1124.

> i. *Defendant Has Purposely Availed Itself of the Privilege of Conducting Activities in the State of North Carolina And the Western District.*

Here, Plaintiffs have established that this Court has personal jurisdiction over Citrix because it has purposely availed itself of the privilege of conducting activities in the State of North Carolina, including within this District. Specifically, Citrix sells its technology and software globally, nationally, and throughout North Carolina. *See* Dkt. 8 at 7-8. That said, Plaintiffs, maintain relationships with Citrix's customers in this District and across the State, but also engage in cold-calling businesses in this District, to increase Citrix's statewide presence through various relationships (i.e., by acquiring state, local, municipal or private contracts). *See* Dkt. 22; *see also* Ex. 4. Furthermore, Citrix's technology and software are found and used throughout the state, including in this District. As stated, Citrix maintains offices in North Carolina, employs thousands of individuals throughout North Carolina, (in both the Eastern and Western Districts), and maintains an interactive website, so that anyone in North Carolina interested in purchasing Citrix software and technology can find local suppliers/partners authorized to sell Citrix's products in any part of the State, including this District. *See* Ex. 4. [9]

In fact, Citrix also maintains a Code of Business Conduct that sets the standards of conduct for suppliers and partners working on behalf of Citrix, and any questions relating to Citrix's Code of Conduct are directed to call Citrix's Helpline or Global Compliance office,

---

[9] *See* screenshots of Defendant Citrix's interactive website, which facilitates the search for Citrix's suppliers and partners permitted to sell and service Citrix's technology, products, and software, as well as request Citrix Sales Representative to reach out and provide more information and/or a demonstration, Ex. 4; *see also* Dkt. 8, ¶ 39 (describing Sales Representatives' responsibility to perform sale demonstrations for clients and prospective buyers).

which is also located in this District.[10]

As to Citrix's interactive website, it is clearly designed to (1) direct electronic activity into the State by facilitating the search for Citrix partners/suppliers who handle, sell, and maintain Citrix's products, while also facilitating the search for experts or sales persons such as Plaintiffs, who provide information regarding Citrix's ShareFile products to potential Citrix customers throughout the State; (2) with the manifested intent of engaging in business or other commercial interactions within the State (i.e., managing, establishing, or increasing its business relationships through increased contracts for the purchase and use of Citrix products and software); and (3) as a result, such activities and contacts have created in persons such as Plaintiffs, who are either current or former sales employees within the State, a potential cause of action cognizable in North Carolina's courts for violations of both federal and state wage and hour laws. Thus, Citrix has extensively and purposefully availed itself of the privilege of conducting activities in this district and state and, consequently, the jurisdiction of this Court.

      ii.   *Plaintiff's Causes of Action Arise from Those Activities which Defendant Purposely Targeted North Carolina and This District.*

The second prong of the three-part test for specific personal jurisdiction is also satisfied because Plaintiff's class and collective action claims for violations of the FLSA and the NCWHA arise from those activities that Defendant purposely directed in North Carolina and this District. As discussed, *supra* III.A.i, Defendant's intentional engagement with potential clients and existing customers through its fully interactive website, including placing website visitors into contact with Sales Representatives for demonstrations, relate to the very work

_____

[10] *See* Ex. 8, Citrix Code of Conduct, at 11 (showing office located in Charlotte, North Carolina).

performed by Plaintiffs that gave rise to the underlying cause of action in this matter.[11] Specifically, in light of the nature of Plaintiffs' work on behalf of Citrix, Plaintiffs have suffered federal and state wage and hour violations, due to their unpaid wages related to Citrix's work requirements. *See* Ex. 6, Cirillo Decl., ¶¶ 26-29, 33-36; Ex. 7, Stiles Decl., ¶¶ 7-23. Plaintiffs must come in early prior to the start of their shift, to engage in certain pre-shift activities (i.e., preparing for their day or contacting clients earlier than usual), or they must engage in post-shift activities to either fulfill client calls or video-conferencing to discuss Citrix's products and software, finish paperwork, and/or meet Citrix's deadlines. *See* Dkt. 8, ¶ 42. Citrix's efforts to avoid the implications of its own conduct by arguing that Plaintiffs' claims do not arise from or relate to its contacts with the Western District is disingenuous. *See* Dkt. 12-1, at 8-10. Given Citrix's required activities to increase their customer base and presence irrespective of the District, there is no question Plaintiffs' claims arise out of Citrix's Activities in North Carolina and targeted advertisements of services in this District.

          iii.   *This Court's Exercise of Personal Jurisdiction Over Defendant Is Constitutionally Reasonable.*

The third and final factor for the Court's consideration is whether the exercise of personal jurisdiction would be "constitutionally reasonable." Courts have repeatedly recognized that personal jurisdiction over a non-resident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum district] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

---

[11] Contrary to Defendant's assertion that Plaintiff's claims are pinned to a single meeting that took place in Raleigh, North Carolina, Plaintiff's claims arise from Defendant's systemic failure to compensate Plaintiff and those in similar sales representative roles for all of the work performed, including coordinating and conducting business with visitors to Defendant's interactive website. *See* Dkt. 8, ¶ 2.

justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Thus, a determination that the defendant has established sufficient minimum contacts with the forum amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009*) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985)); *see also Chung v. NANA Dev. Corp.*, 783 F. 2d 1124, 1127-28 (4th Cir. 1986) (specific jurisdiction is constitutionally reasonable where a contract creates a "substantial and continuing" relationship between the defendant and the forum resident). Indeed, "the foreseeability that is critical to the due process analysis is . . . that the defendant's conduct and connection with the forum state are such that he should reasonably expect to be haled into court there." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As set forth above, Citrix has established sufficient minimum contacts with the entire State of North Carolina, including this District, such that the exercise of jurisdiction in this forum is constitutionally permissible.

2.  Venue is Proper Because a Substantial Part of the Events or Omissions Giving Rise to Plaintiff's Claims Occurred in the Western District.

Venue is also proper in the Western District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Western District. In determining whether substantial events or omissions occurred, "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

Here, venue is proper because extensive events and omissions occurred in this District

13

giving rise to this action. Plaintiffs are employees of Defendant who work on behalf of Citrix throughout North Carolina, including the Western District. Plaintiffs performed substantial work pursuant to their employment with Defendant in this District, including, but not limited to engaging in customer calls and video-conferencing given the nature of their work, and Citrix's interactive website, which allows individuals to find a Citrix expert (i.e., Plaintiffs) to discuss Citrix's ShareFile products. *See* Exs 6 and 7, Cirillo and Stiles' Decls. at ¶¶ 9-12; *see also* Ex. 4 (illustrating Defendant's efforts to advertise to, engage with, and contract with residents of this District); *see* Ex. 5 (identifying different state-wide agencies, higher-education systems, and local governments as clients of Citrix pursuant to the sales agreement). Defendant also performed other activities in this District, including targeting advertisements to and hiring employees to work from this District. *See* Ex. 3, Job Posting for Citrix position in Charlotte.

Defendant asserts that venue in this District is improper because "all or virtually all" of the events giving rise to Plaintiffs claims took place in the Eastern District. *See* Dkt. 12-1 at 7-10. Nothing can be further from the truth. As shown above, Defendant invested extensive time and resources in this District to promote and sell its products and services, including but not limited to, its physical presence in the state, interactive website, thousands of employees and agents, and Plaintiffs who also performed work in this District in light of the required sales work with customers and potential customers. At most, Defendant suggests that venue could also lie in the Eastern District. However, even assuming that were correct, venue may be "proper in more than one judicial district" under Section 1391(b)(2). *Mitrano*, 377 F.3d at 405. Here, venue is clearly proper in this District, in light of the activities described above. *See, e.g., Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998) ("While

14

venue would clearly be proper in the Middle District of Pennsylvania in this case, it is also proper here."). Because venue is proper in this District under Section 1391(b)(2), Defendant's argument under Section 1406(a) fails.

### B. Defendant's Reliance on 28 U.S.C. § 1404(a) Fails Because This District is the Most Convenient Forum for This Action.

Defendant alternatively invokes Section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A plaintiff's choice of forum is often the most important factor in a transfer of venue analysis." *See Hunter v. Mountain Commerce Bank*, 2016 WL 5415761, at *11 (M.D.N.C. Sept. 28, 2016). Even if the plaintiff's choice of forum is inconvenient for defendants, "[t]he court should refrain from transferring venue, if to do so would simply shift the inconvenience from one party to another." *Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.,* 933 F.Supp. 507, 513 (M.D.N.C.1996); *see also NOA, LLC,* 2014 WL 3667230, at *8.

"District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Courts in this District have additionally examined the following factors under Section 1404(a):

> (1) plaintiff's initial choice of the forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5)

15

enforceability of a judgment if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) all other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interests in having localized controversies settled at home; (10) the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflict of laws.

*Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 450–51 (W.D.N.C. 1989); *see also Whitmire v. S. Farm Bureau Life Ins. Co.*, 5:20-CV-000018-M, slip op. at 5 (E.D.N.C. May 20, 2020). Factors one, two, and three overlap with the Fourth Circuit's factors, and any remaining relevant factors can be considered under an "interest of justice" analysis. *Whitmire*, slip op. at 5. Here, the factors strongly favor this District as the proper forum.

### 1. Plaintiff's Choice of Forum Should be Given Great Weight.

Plaintiff has filed this action in the Western District. That choice "should be given great weight." *Id.* at 6. Indeed, a "plaintiff's choice of forum is often the most important factor in a transfer of venue analysis," *Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 669 (M.D.N.C. 2006), and "'should rarely be disturbed.'" *WPB Partners, LLC v. Old Republic Nat. Title Ins. Co.*, No. 5:12-CV-132-F, 2013 WL 395112, at *4 (E.D.N.C. Jan. 31, 2013) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)); *see also Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 619 (E.D.N.C. 2014) ("a paramount consideration").

Here, maximum deference should apply. Plaintiff resides in North Carolina, only *two* hours away from this District, and granting Defendant's motion would greatly prejudice Plaintiffs. Because Plaintiff filed this matter as an FLSA collective and Rule 23 class action on behalf of approximately 2,000 putative collective/class action members, Defendant's motion ignores the fundamental difference between Rule 23 class action and FLSA collective

16

actions–in a collective action, the class members affirmatively choose to join the litigation, whereas in a Rule 23 action, they automatically become members of a certified class. *See Alix v. Shoney's, Inc.*, 1997 WL 66771, at *3 (E.D. La. Feb. 18, 1997); *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 571 (N.D. Tex. 2005) ("given the nature of FLSA collective actions. . . the [c]ourt finds that [plaintiff's] choice of forum is entitled to respect.). Moreover, this District has extensive connections to the events and omissions giving rise to this lawsuit, as detailed above. *See supra* at 2-13. Accordingly, there is a "strong presumption in favor of retaining the case in this district." *Bourne*, 2020 WL 1491549, at *5. *See also, e.g., NOA*, 2014 WL 3667230, at *9 ("[T]his factor weighs heavily against transfer."). In arguing against deference, Defendant relies on inapposite cases where the plaintiff sued in a forum that had limited or no connection to the events of the case, and significantly, in entirely *different* states. *See Shaw v. Apple, Inc.*, No. 517CV00066RJCDSC, 2018 WL 401541, at *2 (W.D.N.C. Jan. 12, 2018) ("Transfer will generally be granted 'where this district is neither the plaintiff's residence, nor the place where the operative events occurred.'"). However, the opposite is true here. *See supra* at 2-13. Indeed, even if this Court transferred this case to the Eastern District, there is no guarantee that the matter would be overseen by a district judge in Raleigh. In fact, it is just as likely this case could be transferred to a district judge located three (3) hours away in Elizabeth City or over two (2) hours away in New Bern, North Carolina. As such, Plaintiff's choice of forum should not be disturbed.

2.    <u>Convenience of Witnesses and Parties Does Not Favor Transfer.</u>

Here, the *second factor* does not favor transfer. There is no inconvenience of travel for either party. As all of the witnesses identified by both parties are party-witnesses, the convenience of witnesses and parties is considered together. In considering this factor, any

17

witness can be deposed at their home location, and thus the need for witnesses to travel is limited to trial, which may or may not ever take place. As to consideration of party witnesses and the convenience of the parties, the Court should find that such factor is neutral. While some of Citrix's witnesses and documents are located in North Carolina, many of Plaintiff's corporate witnesses are located in Florida, California, and even Oregon. *See supra* 2-5. As stated, any witness may be deposed at their home location; thus, irrespective of whether this matter is litigated in the Eastern or Western District of North Carolina, Plaintiffs' corporate witnesses are located *outside* of North Carolina. Thus, this factor does not favor a transfer. *See NOA, LLC,* No. 5:14-CV-100-FL, 2014 WL 3667230, at *9.

Additionally, Defendant may argue that all of the key documentary evidence, including the software product at issue, is in the Eastern District, and therefore, transfer is appropriate. *See* Dkt. 12-1. However, Plaintiffs assert that while their material documentary evidence may be located in North Carolina, some of it may be located elsewhere, especially where Plaintiffs no longer live in North Carolina.[12] As to corporate documents, Plaintiffs may use, documents that are neither in the Eastern or the Western District of North Carolina, but in Florida, where Citrix's corporate offices are located. *See supra* at 2-12. At any rate, the *physical* location of Citrix's evidence is unimportant because relevant documents are electronic and easily transferable. Much of Plaintiffs' evidence will consist of electronic payroll, earning statements, timesheets, handbooks, etc. *See Abbot Grp., LLC v. Hobie Cat Co.*, No. 107CV156, 2007 WL 1853413, at *3 (W.D.N.C. June 26, 2007) ("[T]he court finds this factor to be neutral inasmuch as electronically stored data is just as accessible in Asheville, North

---

[12] Opt-in Plaintiff Sabrina Stiles currently lives in Denver, Colorado.

Carolina, as it would be in Oceanside, California."). The location of evidence does not alter the balance in favor of transfer, especially where Defendant, a company committed to providing cloud-based services, relies upon the nature of remote access to documents and people.

        3.     <u>Defendant Fails to Identify Any Witnesses Who are Unwilling to Testify in This District or Whose Testimony Cannot be Adequately Preserved Via Depositions.</u>

This *third factor* does not support transfer. Defendant must show that its "witnesses would be unwilling to travel to this jurisdiction." *Longo*, 992 F. Supp. 2d at 618. To meet this burden, Defendant must identify the particular witnesses who reside beyond the Court's subpoena power and who would not voluntarily appear. *See Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020) ("Defendants have not met their burden on this issue" because they "have not named a witness who cannot or is not willing to travel to this district."); *Elec. Sys. Prot., Inc. v. Innovolt, Inc.*, No. 5:09-CV-464FL, 2010 WL 2813503, at *2 (E.D.N.C. July 14, 2010) (similar). Defendant fails to meet its burden. It asserts that it will rely on current and former employees of Defendant, but does not say whether they would appear voluntarily, or how burdensome their appearance would be, instead only offering that Defendant would not instruct such witnesses to refuse to testify. *See id.* (defendant did not meet burden where it failed to provide information regarding materiality of third-party witnesses); *see also* Dkt. 12-1 at 15. Even if Defendant had provided such necessary information, this factor still would weigh against transfer because depositions could preserve the testimony of these witnesses. Defendant does not, and cannot, "persuasively explain why deposing [the witnesses] is insufficient in the instant case." *Bourne*, 2020 WL 1491549, at *6.

19

4.    Factors Four Through Eight Do Not Support Transfer.

Defendant concedes that *factor four*, accessibility for a jury view, is not relevant and therefore does not favor transfer. *See* Dkt. 12-1 at 16. This case requires no jury view. *Factor five*, enforceability of a judgment, does not support transfer. "In deciding transfers between two federal districts, this factor has little relevance because a federal judgment rendered in one district is likely enforceable in another." *Triad*, 473 F. Supp. 2d at 671. Defendant uses *factor six*, obstacles to a fair trial, to repeat its arguments about nonparty witnesses. *See* Dkt. 12-1 at 16-17. Those arguments do not support transfer for the reasons explained above. *Factor seven*, practical trial considerations, does not support transfer. Defendant asserts that "all witnesses reside outside of the Western District." As stated above, however, any witness can be deposed at their home location or remotely, and thus the need for witnesses to travel is limited to trial, which may or may not ever take place, and even if this matter were litigated in the Eastern District, there is no guarantee that trial would take place in Raleigh versus Elizabeth City or New Bern, North Carolina.

*Factor eight*, court congestion, does not favor transfer. When considering court congestion, this Court compares not only the disposition timeframe, but also the caseload per judge and the number of civil cases over three years old. *See Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 805 (M.D.N.C. 2008). Tactically, Defendant only cites statistics from mid-2020 showing no difference between the Eastern and Western Districts in the median time from filing to disposition of civil cases, disregarding other, persuasive factors. *See* Dkt. 12-1 at 18. A more comprehensive and transparent evaluation of the *same* data cited by Defendant shows the "significant difference between districts" in fact favors maintaining this matter in this district. *WPB Partners*, 2013 WL 395112, at *4 n. 7.

20

Specifically, Defendant's cited data outlines the congested docket in the Eastern District of North Carolina, especially as compared to the Western District, which may more efficiently, and appropriately, address this matter. *See Datasouth Computer Corp.*, 719 F. Supp. at 453 (finding the W.D.N.C's lighter docket weighed *against* the transfer of the case).

| Workload Statistic | W.D.N.C. | E.D.N.C. |
|---|---|---|
| Pending Civil Cases per Judgeship | 375 | 874 |
| Median Time from Filing to Disposition | 10.5 | 10.7 |
| Median Time from Issue to Trial | 8.7 | 8.7 |
| Number (and %) of Civil Cases Over 3 Years Old | 74 (6.3%) | 301 (14.2%) |

*See* Administrative Office of the United States Courts, *U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2020), excerpt attached hereto as Ex. 9. Significantly, the Eastern District of North Carolina is currently managing nearly *twice as many cases*, and with fewer judgeships, than this Court. *Id.* Moreover, due to Plaintiffs' counsel's current litigation experience in all districts of North Carolina, Plaintiffs have found that since the Covid-19 Pandemic, litigation in both the Eastern and Middle Districts of the State has been significantly delayed; thus, in the interest of judicial efficiency and preventing administrative difficulties, Plaintiff's choice of forum should not be disturbed.

5.    Because the State of North Carolina And This District Are Home to This Controversy, There is a Strong Interest in Adjudicating It.

"[C]ourts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." *Sales Consultants of Cary, LLC v. CareerBuilder, LLC*, No. 5:08-CV-260-BR, 2008 WL 11381887, at *4 (E.D.N.C. Dec.

2, 2008). This factor strongly favors this District as forum. Plaintiff has brought suit in this District to recover for injuries that Defendant inflicted here by failing to properly pay Plaintiffs for work that was performed in this district, with residents of this district, and throughout North Carolina pursuant to the FLSA and the NCWHA. *See Supra* at 2-12.

6.     No Conflict of Laws Exists.

Plaintiffs are not aware of any conflict of law concerns as between the Eastern and Western Districts of North Carolina, and Plaintiffs did not agree to a forum selection clause with Citrix as to the Eastern District.

7.     The Interests of Justice Favor Keeping Case in This District

The interests of justice favor keeping the lawsuit in this District for two reasons. First, courts should discourage forum shopping, which is what Citrix appears to be doing, especially, when Citrix is simply requesting to have the matter transferred only two hours away within North Carolina, despite apparently no corporate officers residing in the state. Second, the delay inevitably caused by a transfer would impose a hardship on Plaintiffs, because delay in issuing notice will eliminate claims of opt-in Plaintiffs. Courts should consider whether a request for transfer is due to forum shopping, which is not an appropriate reason for transfer. *See Freeman v. Hoffman-LaRoche, Inc.*, 2007 U.S. Dist. LEXIS 23132, at *7-8 (S.D.N.Y. Mar. 21, 2007). As the Second Circuit has held:

> Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum shopping reason, defendants also may move for dismissal . . . not because of genuine concern with convenience but because of similar forum shopping reasons. District Courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. . .

*See Iragorri v. United Technologies Corp.*, 274 F.3d 65, 75 (2d Cir. 2001). Plaintiffs brought this case in this District for a simple reason—they live/lived in North Carolina, worked here, and they have counsel who can represent them anywhere in the State. The interests of justice also weigh against transfer as courts have recognized a presumption that transferring a case is less efficient than transferring evidence. *Funke v. Life Fin. Corp.*, 2003 WL 194204, at *3 (S.D.N.Y. Jan. 28, 2003) (SEC class action) (citing *Cavalo Growers of Cal. V. Generali Belgium,* 632 F.2d 963, 969 (2d. Cir. 1980) ("It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit"); *see also Guerrero v. Habla Communicaciones*, 2005 U.S. Dist. LEXIS 41358, at *4 (S.D. Tex. Mar. 15, 2005) ("There is a distinct possibility of delay in the event this case were transferred to the Northern District, simply by virtue of placing this case in the queue of newly-filed cases awaiting assignment to district judge's docket.")

We need not rest on the recognized presumption, however. Should the case be transferred, Plaintiffs will have to wait for the matter to be reassigned to an Eastern District judge's docket, again, without any guarantee that it will be assigned to a Raleigh district judge's docket, thereby not guaranteeing Defendant's choice forum no more "convenient." Moreover, a transfer will cause significant delays as Defendant will still be required to file its Answer to Plaintiffs' Complaint, before even the discovery phase is underway. As such, this will cause unnecessary delays for Plaintiffs in filing their motion for conditional/class certification, ruling on their motion, especially in light of the Eastern District's inundated docket, as compared to leaving the case in this district. The delays preclude Plaintiffs from promptly filing their motion for conditional and/or class certification, which inevitably will erode putative Plaintiffs' FLSA claims that precede three (3) years from the Plaintiffs' filing

23

of the Complaint, as opposed to the two-year tolling of the statute of limitations pursuant to Fed. R. Civ. 23 and the NCWHA. Rather, the FLSA statute of limitations is not tolled until a class member files his or her individual "opt-in" form. Accordingly, the members of the putative FLSA collective lose their rights to claim overtime wages with each passing day. *See Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. Oct. 22, 1997). Thus, the interest of both efficiency and justice weigh in favor of the case remaining in this District.

## V.   **CONCLUSION**

For the reasons set forth above, each argument in Defendant's Motions to Dismiss or Transfer should be rejected, and its Motion should be denied.

Respectfully submitted this December 8, 2020,

> */s/ Gilda A. Hernandez*
> Gilda A. Hernandez (NCSB No. 36812)
> Charlotte Smith (NCSB No. 53616)
> Robert W.T. Tucci (NCSB No. 55014)
> **THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
> 1020 Southhill Dr., Ste. 130
> Cary, NC 27513
> Tel: (919) 741-8693
> Fax: (919) 869-1853
> ghernandez@gildahernandezlaw.com
> csmith@gildahernandezlaw.com
> rtucci@gildahernandezlaw.com
>
> *Attorneys for Plaintiff*

24

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the foregoing true and accurate copy of **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER UNDER 28 U.S.C. § 1406(A) OR, ALTERNATIVELY, TRANSFER UNDER 28 U.S.C. § 1404(A)** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document on the following:

Frederick T. Smith
North Carolina Bar No. 45229
SEYFARTH SHAW LLP
121 W. Trade Street
Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 925-6023
E-mail: fsmith@seyfarth.com

*Counsel for Defendant*

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*

25