IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

DANIELLE CIRILLO, on behalf of herself
and all others similarly situated,

       *Plaintiff,*

       v.

CITRIX SYSTEMS, INC.,

       *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)

CA NO.: 5:21-cv-00088-BO

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY THIS MATTER AS A COLLECTIVE ACTION AND FOR A COURT-AUTHORIZED NOTICE TO BE ISSUED UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

        A.      Named Plaintiff and Other Sales Representatives Perform the Same or
                Similar Duties for Defendant.................................................................3

        B.      Named Plaintiff and Other Sales Representatives Are Subject to
                Defendant's Same Unlawful Pay Policies and Practices.........................6

III.    LEGAL ARGUMENT .........................................................................................9

        A.      The Standard for Conditional Certification ..............................................9

        B.      Plaintiff Has Amply Met Her Burden of Production and Made a Modest
                Factual Showing that a Group of Similarly Situated Individuals Exists. ...........12

        C.      The Proposed Notice to Potential Opt-in Plaintiffs Is Appropriate.......................14

                1.      Named Plaintiff's Proposed Judicial Notice Is Accurate and
                        Informative. ...........................................................................14

                2.      A Production of a List of Putative Class Members Is Necessary to
                        Facilitate Notice......................................................................15

                3.      Named Plaintiff Should Be Able to Send Employees the Proposed
                        Notice Electronically, In Addition to Regular Mail. .................16

IV.     CONCLUSION .................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Citicorp Credit Servs., Inc.*
  93 F. Supp. 3d 441 (M.D.N.C. 2015) ...........................................................................2, 9, 10

*Alderoty v. Maxim Healthcare Servs., Inc.*,
  2015 WL 5675527 (D. Md. Sept. 23, 2015) ....................................................................17, 18

*Alequin v. Darden Restaurants, Inc.*,
  2013 WL 3939373 (S.D. Fla. July 12, 2013)............................................................................17

*Avendano v. Averus, Inc.*,
  2016 WL 11692088 (D. Colo. Oct. 25, 2016) ........................................................................18

*Beasley v. Custom Commc'ns, Inc.*,
  2016 WL 5468255 (E.D.N.C. Sept. 28, 2016)........................................................................10

*Bobbitt v. Broadband Interactive, Inc.*,
  2012 WL 1898636 (M.D. Fla. May 23, 2012) .......................................................................15

*Butler v. DirectSAT USA, LLC*,
  876 F. Supp. 2d 560 (D. Md. 2012) ...........................................................................12, 17, 18

*Byard v. Verizon W. Virginia, Inc.*,
  287 F.R.D. 365 (N.D.W. Va. 2012)....................................................................................2, 15

*Calder v. GGC-Baltimore, LLC*,
  2013 WL 3441178 (D. Md. July 8, 2013).........................................................................17, 18

*Calderon v. Geico Gen. Ins. Co.*,
  2011 WL 98197 (D. Md. Jan. 12, 2011)..................................................................................15

*Cerrato v. Durham Public Schools Board of Education*,
  2017 WL 2983301 (M.D.N.C. March 17, 2017) ...............................................................12, 13

*Chado v. Nat'l Auto Inspections, LLC*,
  2019 WL 1981042 (D. Md. May 3, 2019) ..............................................................................10

*Clark v. Williamson*,
  2018 WL 1626305 (M.D.N.C. Mar. 30, 2018).............................................................15, 17, 18

*Clarke v. Convergys Customer Mgmt. Grp., Inc.*,
  370 F. Supp. 2d 601 (S.D. Tex. 2005) ......................................................................................2

*Curtis v. Time Warner Entm't–Advance/Newhouse P'ship*,
  2013 WL 1874848 (D.S.C. May 3, 2013)................................................................................10

*Dearman v. Collegiate Hous. Servs., Inc.*,
   2018 WL 1566333 (W.D.N.C. Mar. 30, 2018)......................................................................10

*Diaz v. Quality Crab Co.*,
   2011 WL 4498939 (E.D.N.C. Sept. 27, 2011)......................................................................19

*Enriquez v. Cherry Hill Mkt Corp.*,
   2012 U.S. Dist. LEXIS 17036 (E.D.N.Y Feb. 10, 2012)......................................................19

*Faust v. Comcast Cable Commc'ns Mgmt., LLC*,
   2011 WL 5244421 (D. Md. Nov. 1, 2011) .............................................................................2

*Ferebee v. Excel Staffing Serv.*, Inc.,
   2017 WL 1416533 (E.D.N.C. Apr. 19, 2017)......................................................................18

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   678 F. Supp. 2d 89 (E.D.N.Y. 2010) ...................................................................................19

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)..................................................................................................................9

*Gionfriddo v. Jason Zink, LLC*,
   769 F. Supp. 2d 880 (D. Md. 2011) .....................................................................................12

*Grayson v. K Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996) .............................................................................................12

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. 1999) ........................................................................................13

*Hart v. Barbeque Integrated, Inc.*,
   299 F. Supp. 3d 762 (D.S.C. 2017)......................................................................................10

*Hipp v. Liberty Nat. Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) ...........................................................................................12

*Hoffman-LaRoche, Inc. v. Sperling*,
   493 U.S. 165 (1989)........................................................................................................passim

*Holland v. Fulenwider Enterprises, Inc.*,
   2018 WL 700801 (W.D.N.C. Feb. 2, 2018) .........................................................................10

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
   132 F. Supp. 3d 707 (D.S.C. 2015)......................................................................................18

*Kerce v. West Telemarking Corp.*,
   575 F.Supp.2d 1354 (S.D. Ga. 2008)...................................................................................13

iv

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
2017 WL 3841858 (M.D.N.C. Sept. 1, 2017)...............................................................9, 12

*Lewis v. Precision Concepts Group, LLC*,
No. 1:18-cv-00064, Doc. No. 46 (M.D.N.C. July 29, 2019) ....................................18

*Long v. CPI Sec. Sys., Inc.*,
292 F.R.D. 296 (W.D.N.C. 2013)..............................................................................15

*Malloy v. Richard Fleischman & Assocs. Inc.*,
2009 WL 1585979 (S.D.N.Y. 2009)...........................................................................19

*Mata v. Footbridge LLC*,
2015 WL 3457293 (S.D.N.Y. June 1, 2015) ..............................................................10

*McGlon v. Sprint Corp.*,
2016 WL 7103949 (D. Kan. Dec. 6, 2016)...................................................................2

*McLaurin v. Prestage Foods, Inc.*,
271 F.R.D. 465 (E.D.N.C. 2010) ............................................................................9, 11

*Mendoza v. Mo's Fisherman Exch., Inc.*,
2016 WL 3440007 (D. Md. June 22, 2016)................................................................17

*Monroe v. FTS USA, LLC*,
257 F.R.D. 634 (W.D. Tenn. 2009) ...........................................................................11

*Morgan v. Family Dollar Stores*,
551 F.3d 1233 (11th Cir. 2008) .................................................................................11

*Moss v. Senior Care Carolinas, PLLC*,
2020 WL 3472600 (W.D.N.C. June 25, 2020) ..........................................................16

*Palma v. Metropcs Wireless, Inc.*,
2014 WL 235478 (M.D. Fla. Jan 22, 2014)...........................................................17, 18

*Parker v. K&L Ent., Inc.*,
2020 WL 7491077 (E.D.N.C. Dec. 21, 2020) .......................................................16, 18

*Pontones v. San Jose Rest. Inc.*,
2019 WL 5680347 (E.D.N.C. Oct. 31, 2019).........................................................9, 10

*Pontones v. San Jose Rest. Inc.*,
2020 WL 1888984 (E.D.N.C. Apr. 8, 2020)...............................................................16

*Rehberg v. Flowers Foods, Inc.*,
2013 U.S. Dist. LEXIS 40337 a (W.D.N.C. Mar. 22, 2013) .................................16, 19

*Reynolds v. Fid. Investments Institutional Operations Co., Inc.*,
　2020 WL 91874 (M.D.N.C. Jan. 8, 2020) .................................................................2

*Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*,
　2016 WL 3077936 (E.D. Pa. June 1, 2016) .............................................................2

*Romero v. Mountaire Farms, Inc.*,
　796 F. Supp. 2d 700 (E.D.N.C. 2011) ..............................................................12, 13

*Rosinbaum v. Flowers Foods, Inc.*,
　238 F. Supp. 3d 738 (E.D.N.C. 2017) ....................................................................9

*Russell v. Illinois Bell Tel. Co.*,
　575 F. Supp. 2d 930 (N.D. Ill. 2008) ......................................................................2

*Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*,
　2017 WL 4322404 (E.D.N.C. Sept. 28, 2017) .......................................................9

*Seldomridge v. Fifth Third Bank*,
　2019 WL 3842403 (S.D. Ohio Aug. 15, 2019) .......................................................2

*Sellers v. Sage Software, Inc.*,
　2018 WL 5631106 (N.D. Ga. May 25, 2018) .....................................................2, 13

*Shabazz v. Asurion Ins. Serv.*,
　2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008) .....................................................2

*Sharkey v. Fortress Sys. Intl., Inc.*,
　2019 WL 845265 (W.D.N.C. Jan. 15, 2019) .........................................................11

*Sheffield v. BB&T Corp.*,
　2017 WL 1831091 (E.D.N.C. May 4, 2017) ..................................................2, 9, 11

*Sherrill v. Sutherland Glob. Servs., Inc.*,
　487 F. Supp. 2d 344 (W.D.N.Y. 2007) ....................................................................2

*Vasto v. Credico (USA) LLC*,
　2016 WL 2658172 (S.D.N.Y. May 26, 2016) .......................................................18

*Whitehorn v Wolfgang's Steakhouse, Inc.*,
　2011 WL 420528 (S.D.N.Y. 2011) ........................................................................19

*Williams v. ezStorage Corp.*,
　2011 WL 1539941 (D. Md. Apr. 21, 2011) ...........................................................10

*Williams v. G4S Secure Sols. (USA) Inc.*,
　2018 WL 565718 (M.D.N.C. Jan. 24, 2018) ...........................................10, 11, 12

**Statutes**

29 U.S.C. § 201 ...................................................................................................................1

29 U.S.C. § 216(b)........................................................................................................passim

47 U.S.C. § 227 .................................................................................................................18

**Rules**

Fed. R. Civ. P. 20 .............................................................................................................12

Fed. R. Civ. P. 23 ...............................................................................................................9

Fed. R. Civ. P. 42 .............................................................................................................12

## I.   **INTRODUCTION**[1]

Named Plaintiff Danielle Cirillo ("Named Plaintiff") has brought this suit on behalf of herself and other similarly situated customer service representatives/salespersons ("Sales Representatives" or "Plaintiffs") who have worked for Citrix Systems, Inc. ("Defendant"), seeking to recover at least minimum wage for all hours worked and unpaid overtime for hours worked in excess of forty (40) in a week. The Sales Representatives who make up the proposed collective performed similar duties, were similarly misclassified as exempt from overtime, and, as a result, subject to the same unlawful policies and practices implemented by Defendant in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Specifically, these individuals (1) initiated and/or secured sales of Defendant's products and services in Defendant's Raleigh, North Carolina office; (2) were required to perform unpaid pre- and post-shift work, as well as work through their lunch breaks; and (3) did not receive properly-calculated overtime compensation for hours worked in excess of 40 per week. Accordingly, Plaintiff seeks conditional collective certification of a collective action pursuant to Section 216 (b) of the FLSA to provide timely notice to the following group of individuals:[2]

> All individuals who were, are, or will be employed by defendant or performed work for Defendant as inside sales representatives or in other similar positions in North Carolina at any time within the past three (3) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and who were subject to defendant's timekeeping policy of only documenting scheduled shift times; subject to defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive

---

[1] In support of Plaintiff's Motion for Conditional Certification, Plaintiff cites the following: Plaintiff's First Amended Collective and Class Action Complaint, Dkt. 8; a copy of Named Plaintiff's Earning Statement, Dkt. 14-1; the Declaration of Named Plaintiff Danielle Cirillo ("Cirillo Decl."), Dkt. 14-6; the Declaration of Opt-In Plaintiff Sabrina Stiles ("Stiles Decl."), Dkt. 14-7; the Declaration of Lee Ruderman ("Ruderman Decl."), Dkt. 12-2; a sampling of inside sales job postings by Citrix ("Job Postings"), attached hereto as Exhibit A; a copy of email correspondence regarding Sales Targets and Commissions ("Sales and Commission Targets"), attached hereto as Exhibit B.

[2] On April 2, 2021, the Parties counsel conferred regarding Plaintiff's impending motion for conditional certification; a response regarding consent was not available, as Defendant was closed for Good Friday.

1

compensation for all required pre and/or post shift work, including during lunch breaks or who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

Plaintiff respectfully requests this Court grant Plaintiff's motion for conditional certification and allow opt-in notice to issue because, as set out below, Plaintiff has met her burden of making a modest factual showing that Defendant uses a common policy of requiring employees to perform unpaid work and failing to compensate Plaintiffs for all hours worked in excess of forty (40) in a week, including improperly calculating employees' overtime compensation. *See Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 456 (M.D.N.C. 2015).[3]

In light of this substantial group of similarly situated employees with similar claims against Defendant, Plaintiff also asks the Court to issue notice of this action as quickly as possible, since the filing of the complaint does not toll the statute of limitations for FLSA "opt-in" plaintiffs. *See* 29 U.S.C. § 256 (b). "[P]rospective plaintiffs under FLSA must expressly consent to join the

---

[3] In fact, courts in the Fourth Circuit and around the country have routinely granted certification to employees bringing FLSA claims for unpaid pre- and/or post-shift activities and/or alleging improper overtime calculations. *See, e.g., Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *2 (M.D.N.C. Jan. 8, 2020); *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 377 (N.D.W. Va. 2012) (certifying collective of customer service representatives who were not compensated for all pre- and post-shift work, including not receiving overtime for hours worked in excess of forty); *Sheffield v. BB&T Corp.*, 2017 WL 1831091 (E.D.N.C. May 4, 2017) (certifying a class of customer service representatives who were scheduled to work more than forty-hours per week and not compensated overtime); *Seldomridge v. Fifth Third Bank*, No. 1:18-CV-553, 2019 WL 3842403, at *4 (S.D. Ohio Aug. 15, 2019); *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *1 (N.D. Ga. May 25, 2018) (certifying a collective of inside sales representatives where the defendant failed to compensate overtime wages and willfully failed to properly track and record the sales representatives work hours); *Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. CV 15-482, 2016 WL 3077936, at *11 (E.D. Pa. June 1, 2016) (finding the identified collective of sales representatives were similarly situated where the employer misclassified employees as exempt from minimum wage and overtime requirements of the FLSA); *McGlon v. Sprint Corp.*, No. 16-CV-2099-JAR, 2016 WL 7103949, at *8 (D. Kan. Dec. 6, 2016) (certifying class of sales representatives who were permitted to report only forty hours of work despite working in excess, which resulted in unpaid overtime pay); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, 2011 WL 5244421 (D. Md. Nov. 1, 2011); *Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007); *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005).

2

class," *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003), and the statute of limitations will continue to run for potential plaintiffs until they opt into the case. Notice is therefore essential to enabling potential plaintiffs to assert their rights under the FLSA and, as the Supreme Court has noted, the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset*." Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 172-73 (1989).

## II.    FACTUAL BACKGROUND

Defendant is a technology company that develops and sells cloud-based software, desktop and application virtuality, and data sharing technologies, which facilitate remote work. Dkt. 8; Dkt. 12-2, Ruderman Decl., ¶ 3. In providing and selling these products and services, Defendant maintains inside or digital sales teams, comprised of inside Sales Representatives such as Plaintiffs. Dkt. 12-2, Ruderman Decl., ¶ 10. Upon information and belief, Defendant employs more than 2,000 Sales Representatives in North Carolina. *See* Dkt. 8, ¶ 31; Dkt. 14-6, Cirillo Decl., ¶ 8; Dkt. 14-7, Stiles Decl., ¶ 5-6.

### A.    Named Plaintiff and Other Sales Representatives Perform the Same or Similar Duties for Defendant.

Plaintiff Cirillo and Opt-in Plaintiff Stiles were employed by Defendant as sales representatives or in similar positions. Specifically, Plaintiff Cirillo was initially hired as a Sharefile Corporate Sales Representative and worked for Defendant as a Sales Representative from July 9, 2018 until January 30, 2020. Dkt. 14-6, ¶ 1. During the course of her employment, Opt-in Plaintiff Stiles worked for Defendant and held various sales-related positions, including Sales Development Representative, Associate Corporate Sales Representative II, and a Territory Manager.  Dkt. 14-7, ¶¶ 1, 6. Regardless of Plaintiffs' specific position titles, Plaintiffs are responsible for largely the same duties—contacting current customers, dormant, customers, and

new customers to initiate and/or close sales leads.[4] *See* Dkt. 14-6, Cirillo Decl., ¶¶ 6-11; Dkt. 14-7, Stiles Decl., ¶¶ 5-11. Likewise, while Sales Representatives may be assigned to work on specific teams that focus on either selling specific products or teams that service specific geographic regions, Defendant maintains the same output expectations of Sales Representatives — to continue engaging clients and selling Defendant's products and services. *See* Dkt. 8, ¶ 39; Dkt. 14-6, Cirillo Decl., ¶¶ 5-6 (identifying working on the Small Business Team, Outbound Team, and Inbound Team, as well as identifying sales representative's general progression to working on the Territory Team); *see also* Dkt. 14-7, ¶¶ 5-6 (identifying working on Lead Generation Group and the Growth Team upon being promoted to a territory manager, but continuing duties related to selling Defendant's services and products). Importantly, Sales Representatives work in the Raleigh office and perform the majority of their work from their workspace at Defendant's office. *See* Dkt. 12-2, Ruderman Decl., ¶ 5; Dkt. 8, ¶ 91 (asserting a sales representative working from home was considered "a problem").

Defendant typically schedules Sales Representatives to work an eight-hour shift, with a one-hour, unpaid lunch break, five (5) days per week. Dkt. 8, ¶¶ 15, 41; Dkt. 14-6, Cirillo Decl., ¶¶ 13-14; Dkt. 14-7, Stiles Decl., ¶¶ 13-15. In reality, though, Plaintiffs regularly performed work-related tasks outside of their scheduled shift times, including working before and after their shifts as well as during their unpaid lunch breaks, in order to meet Defendant's sales goals and generally provide satisfactory assistance to clients in various time zones. *See* Dkt. 8, ¶ 41.  For example, prior to the start of each shift, Sales Representatives typically arrive anywhere from ten (10) to

---

[4]Specific sales tasks performed by Plaintiffs include communicating with current and prospective customers, whether telephonically or via video conference, regarding products and services developed and offered by Defendant and performing sales demonstrations for clients and prospective customers. Dkt. 8, ¶ 39; *see also* Ex. A, Job Postings (identifying various inside sales positions on different teams with the same/similar duties and responsibilities, including implementing Citrix's sales methodology and ability to meet sales targets).

4

fifteen (15) minutes early in order to begin logging onto various programs, including Workday, Podio, and Coffee, reading emails, and performing other work-related tasks to become work-ready, such as checking emails and returning voicemails or calling clients queued to schedule a sales demonstration. *See id.*; Dkt. 14-6, Cirillo Decl., ¶ 13; Dkt. 14-7, Stiles Decl., ¶ 14. Plaintiffs were required to arrive to work early, because the individual teams typically had meetings that started right as the scheduled shift start time and if Plaintiffs arrived at the start of their shift, they would be late to the meeting.[5] Dkt. 14-6, Cirillo Decl., ¶ 13; Dkt. 14-7, Stiles Decl., ¶ 14. Additionally, during Plaintiffs unpaid lunch breaks, Plaintiffs were required to continue working and assisting clients with sales inquiries, including walking prospective clients through demonstrations of Defendant's products. Dkt. 8, ¶ 44; Dkt. 14-6, Cirillo Decl., ¶ 15; Dkt. 14-7, Stiles Decl., ¶ 16. Often, managers would even hold meetings during the lunch hour. Dkt. 14-6, Cirillo Decl., ¶ 15. Lastly, Sales Representatives regularly continued working past the end of their shift, including finishing phone calls with clients, shutting down their workstations, completing paperwork, and sending emails or otherwise following up with clients and prospective customers. *See* Dkt. 8, ¶ 45; Dkt. 14-6, Cirillo Decl., ¶ 14; Dkt. 14-7, Stiles Decl., ¶ 15. This post-shift work was necessary to address outstanding work and issues that needed to be addressed with customers who required more time or lived in separate time zones, and to follow up on internal matters with coworkers and managers. *See* Dkt. 8, ¶ 46 (asserting the respective locations and volume of prospective customers required Sales Representatives to continue working past their shift as much as an additional three (3) hours); Dkt. 14-6, Cirillo Decl., ¶ 14; Dkt. 14-7, Stiles Decl., ¶ 15.

---

[5] In fact, if Plaintiffs arrived at exactly the start of their shifts, they would not have time to perform the necessary pre-shift work, and they would be considered "tardy," which could lead to disciplinary consequences, including adversely affecting Plaintiffs' metrics for monthly commissions. *See* Dkt. 14-6, Cirillo Decl., ¶ 22.

5

As a result of the pre- and post-shift work, as well as working through lunch breaks, Plaintiffs typically worked ten (10) to thirteen (13) hours of inevitable overtime, in excess of their scheduled 40-hour weekly shift. Dkt. 8, ¶ 59; Dkt. 14-6, Cirillo Decl., ¶ 16; Dkt. 14-7, Stiles Decl., ¶ 17.

**B.**     **Named Plaintiff and Other Sales Representatives Are Subject to Defendant's Same Unlawful Pay Policies and Practices.**

Regardless of job duties performed and Plaintiffs working as inside sales representatives at Defendant's Raleigh, North Carolina, location, Defendant, at all times, classified Plaintiffs as overtime exempt. Dkt. 8, ¶¶ 35, 53. Dkt. 14-6, Cirillo Decl., ¶ 1. At the outset of Plaintiffs' employment, Defendant notified Sales Representatives they would begin as an exempt employee and compensated on a salary basis plus commissions. *See* Dkt. 8, ¶¶ 35, 53; Dkt. 14-6, Cirillo Decl., ¶ 1. Commissions were nondiscretionary, paid monthly, and determined based on objective metrics pursuant to a formula used by Defendant. Dkt. 8, ¶¶ 69-70. Specifically, commissions were based on a scale, where if Sales Representatives hit a certain percentage in their sales, they would be paid a certain amount in addition to their other wages. *See* Dkt. 14-6, Cirillo Decl., ¶ 28; Dkt. 14-7, Stiles Decl., ¶ 22; *see also* Ex. B, Sales and Commission Targets (comparing and ranking sales representatives—who held different titles--based on percentage of sales achieved). During the time period where Sales Representatives received a base salary, Defendant did not require Plaintiffs to document hours worked and did not compensate Plaintiffs based on hours worked, including *any* overtime wages for hours worked in excess of forty (40) in a week. *See* Dkt. 8, ¶ 54; Dkt. 14-6, Cirillo Decl., ¶ 26; Dkt. 14-7, Stiles Decl., ¶ 18.

While Defendant historically paid Sales Representatives a base salary plus commissions, beginning in January 2019, Defendant converted Sales Representatives to hourly employees.[6] Dkt.

---

[6] For example, as a salaried Sales Representative, Named Plaintiff Cirillo earned approximately $42,500

8, ¶ 55. In January 2019, Defendant began notifying Sales Representatives that despite their roles and duties remaining the same, Sales Representatives would no longer be salaried-employees and would be converted to hourly employees but would maintain the same, nondiscretionary commission structure. Dkt. 8, ¶ 55-56, 62; Dkt. 14-6, Cirillo Decl., ¶ 2; Dkt. 14-7, Stiles Decl., ¶ 2. During the roll-out of this change in compensation policy, several sales managers and multiple Human Resources representatives were responsible for explaining the new policies that would affect all inside Sales Representatives. Dkt. 12-2, Ruderman Decl., ¶ 8. When doing so, Defendant's managers and supervisors advised and instructed Sales Representatives they would now be required to complete timesheets but would only be permitted to document their *scheduled shifts* on the timesheets. Dkt. 8, ¶¶ 57-58; Dkt. 14-6, Stiles Decl., ¶ 18 ("My supervisor, Sarah Fulk, told our team that we were only to report our scheduled time on our timesheet. When some of us asked about reporting our hours worked outside of scheduled or core hours, management deflected and said, 'You'll figure it out.'"); Dkt. 14-7, Stiles Decl., ¶ 19 ("We were told to only to report our scheduled time on our timesheet. When some of us asked about reporting our hours worked outside of scheduled or core hours, management deflected and said, 'If you can't get your job done in within your scheduled hours, you don't need to work here.'").

Explicitly, Plaintiffs were not permitted to include *any* of the time spent performing pre-shift and post-shift work or working "lunch breaks" on their timesheets. Dkt. 14-6, Cirillo Decl., ¶ 17 (averring "we were not allowed to record our time coming in early (pre-shift) to speak with existing or new clients or report the time we stayed late (post-shift)"); Dkt. 14-7, Stiles Decl., ¶ 18

---

per year, plus commissions, (notably, commissions do not exceed other wages). Dkt. 14-6, Cirillo Decl., ¶ 2; *see* Dkt. 14-1. Following the change in compensation, Named Plaintiff Cirillo was assigned an hourly rate of $20.43 per hour, consistent with her prior salary (assuming only forty-hour workweeks). Likewise, Opt-in Plaintiff Stiles received $33,750 per year, plus commissions, but was assigned an hourly rate of approximately $18.00 per hour in January 2019. *See* Dkt. 14-7, Stiles Decl., ¶ 2.

("Even though Citrix managers knew we worked more than our scheduled hours, we were not allowed to record more than our scheduled time."). To ensure Sales Representatives abided by the company policy to only document scheduled shift times as hours worked, if Sales Representatives entered their actual time on the timesheets, the system would automatically alert the manager of the "error," at which point, the manager would ensure that any time recorded outside of the scheduled shifts was removed (whether by management or the employees themselves). Dkt. 14-6, Cirillo Decl., ¶ 19; Dkt. 14-7, Stiles Decl., ¶ 20.  If Plaintiffs were able to record overtime hours and it went "uncorrected," Defendant still failed to compensate Plaintiffs any overtime wages at a premium overtime rate and paid only the regular hourly rate for overtime hours worked. *See* Dkt. 14-1 (showing compensation of the same hourly rate for regular hours and overtime hours worked). Disheartened by Defendant's refusal to compensate Plaintiffs for all hours worked and management's reprimands to "correct" timesheets, Plaintiffs eventually gave up reporting actual hours worked and reported only scheduled shifts times, in order to comply with Defendant's policies, as they knew they would not be compensated overtime regardless. Dkt. 14-6, Cirillo Decl., ¶ 19; Dkt. 14-7, Stiles Decl., ¶ 20. As a result, Plaintiffs have not received compensation for all hours worked. *See* Dkt. 8, ¶ 63; Dkt. 14-6, Cirillo Decl., ¶ 34; Dkt. 14-7, Stiles Decl., ¶ 28.

Named Plaintiff and other Sales Representatives are similarly situated in that they have substantially similar job requirements and pay provisions and are subject to common practices that require or permit them to perform uncompensated work for the benefit to of Defendant, which failed to pay Plaintiffs for all hours worked, and which and which fails to properly calculate overtime pay for those hours in excess of forty (40) hours per week in violation of the FLSA. *See supra* Section II.A; Dkt. 8, ¶¶ 115-125; Dkt. 14-6, Cirillo Decl., ¶¶ 33-36; Dkt. 14-7, Stiles Decl., ¶¶ 27-31.

### III.  LEGAL ARGUMENT

#### A.  The Standard for Conditional Certification

Plaintiff seeks conditional certification and Court-facilitated notice in this collective action for unpaid wages and overtime under the FLSA, 29 U.S.C. § 216(b). Under the FLSA, an employee may pursue a collective action on behalf of herself and other employees similarly situated. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). To pursue claims as part of a collective action, employees must give consent to join the action filed on their behalf. 29 U.S.C. § 216(b). Therefore, instead of the typical "opt-out" process in Rule 23 actions, employees in FLSA collective actions must affirmatively "opt-in" to join a lawsuit. *Hoffman-La Roche Inc*, 493 U.S. 165. Courts apply a "fairly lenient" standard to conditional certification of FLSA collective action claims, as opposed to class actions certified under Rule 23. *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010).

The Fourth Circuit uses a two-stage procedure for certification of collective actions. *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 2017 WL 3841858, at *4 (M.D.N.C. Sept. 1, 2017); *see also Pontones v. San Jose Rest. Inc.*, No. 5:18-CV-219-D, 2019 WL 5680347, at *3 (E.D.N.C. Oct. 31, 2019); *Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-D, 2017 WL 4322404, at *5 (E.D.N.C. Sept. 28, 2017) (unpublished); *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017).

At the first stage, known as conditional certification, the court "determines whether the employees' claims are similar enough to merit the distribution of court-approved notice to possible class members." *Pontones*, 2019 WL 5680347, at *3. This assessment takes place before discovery. *See Sheffield*, 2017 WL 1831091, at *1–2. Because the court and the parties have minimal evidence at this point in the proceedings, the conditional certification determination is made using a lenient standard. *See Adams.*, 93 F. Supp. 3d at 452–54; *See also Pontones*, 2019

WL 5680347, at *4 ("Plaintiffs may rely on pleadings, affidavits, and declarations to satisfy the FLSA collective-action requirement."); *Dearman v. Collegiate Hous. Servs., Inc.*, 2018 WL 1566333, at *3 (W.D.N.C. Mar. 30, 2018) (finding Plaintiff's single declaration, which attested to conversations with other employees familiar with the similar duties and pay warranted conditional certification); *Holland v. Fulenwider Enterprises, Inc.*, No. 17-cv-48, 2018 WL 700801, at *2 (W.D.N.C. Feb. 2, 2018) (same); *Mata v. Footbridge LLC,* 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) (finding a "[p]laintiff could, make the 'modest factual showing' [] with only the allegations contained in his complaint and personal affidavit"); *Curtis v. Time Warner Entm't–Advance/Newhouse P'ship*, No. 12-cv-2370, 2013 WL 1874848, *2 (D.S.C. May 3, 2013) ("The plaintiff bears a low standard of proof at this [first] stage because the district court is simply determining whether similarly situated plaintiffs do in fact exist"); *Williams v. ezStorage Corp.*, No. 10-cv-3335, 2011 WL 1539941, at *3 (D. Md. Apr. 21, 2011) (same).

Indeed, the merits of the case are not evaluated at the conditional certification stage, nor does the court make determinations regarding the credibility of particular affiants. *See Adams.*, 93 F. Supp. 3d at 452–54; *see also Chado v. Nat'l Auto Inspections, LLC*, No. 17-cv-2945, 2019 WL 1981042, at *2 (D. Md. May 3, 2019) ("The case's merits are not considered when a court rules upon conditional certification"); *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 771 (D.S.C. 2017); *Beasley v. Custom Commc'ns, Inc.*, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016). The plaintiff's evidence "must tend to show that there exists a common policy, scheme, or plan that violates the FLSA, but it need not enable the court to determine conclusively whether a class of similarly situated plaintiffs exists." *Williams v. G4S Secure Sols. (USA) Inc.*, 2018 WL 565718, at *2 (M.D.N.C. Jan. 24, 2018) (internal quotations omitted). Ultimately, "all factual

questions and issues of credibility must be resolved in favor of the moving party in a motion for conditional certification." *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 638-39 (W.D. Tenn. 2009).

If the court finds that the plaintiff and potential class members are "similarly situated," then the class is conditionally certified and notice of the action is sent to potential class members. *McLaurin*, 271 F.R.D. at 469; *Williams*, 2018 WL 565718, at *2. After receiving notice, putative class members have the opportunity to opt-in, and the action proceeds throughout discovery as a representative action for those who opt-in. *See id.*; *see also Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008).

The second stage, referred to as the "decertification phase," is triggered by an employer's motion for decertification, usually after discovery has been concluded and when the matter is ready for trial. *See Sharkey v. Fortress Sys. Intl., Inc.*, No. 18-cv-00019, 2019 WL 845265, at *2 (W.D.N.C. Jan. 15, 2019); *Sheffield*, 2017 WL 1831091, at *2. At the decertification stage, the court examines the evidence produced during discovery and revisits its factual determination as to whether the claimants are similarly situated. *See Sharkey*, 2019 WL 845265, at *2. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. *See id.*

In light of this two-tiered framework, "[t]he key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan,* 551 F.3d at 1259. Courts have emphasized that the "similarly situated" requirement is modest. *See Sharkey*, 2019 WL 845265, at *1; *Sheffield*, 2017 WL 1831091 at *1 ("at this initial stage, a lenient standard applies"); *Adams*, 93 F. Supp. 3d at 452–54 ("the 'similarly situated' requirement, although certainly not a 'rubber-stamp approach,' remains relatively modest"). In order to demonstrate that a group of similarly situated employees exists, a plaintiff must only show that her position is similar – not identical – to the positions held by the putative class members. *See Kirkpatrick*, 2017

WL 3841858, at *6; *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). "[T]he 'similarly situated' requirement of § 216 (b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)) (some quotation marks omitted). The court's analysis at this first stage, therefore, "typically results in 'conditional certification' of a representative class." *Cerrato v. Durham Public Schools Board of Education*, 2017 WL 2983301 at *5 (M.D.N.C. March 17, 2017).

**B.** **Plaintiff Has Amply Met Her Burden of Production and Made a Modest Factual Showing that a Group of Similarly Situated Individuals Exists.**

Plaintiff has amply satisfied her modest burden of showing that a group of similarly situated employees exists. *See generally* Dkt. 14-6, Cirillo Decl.; Dkt. 14-7, Stiles Decl. Importantly, Plaintiff is not required to show that all call center employees they seek to represent are *identically* situated: "differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011); *see also Kirkpatrick*, 2017 WL 3841858, at *6; *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 886 (D. Md. 2011) ("'similarly situated' need not mean 'identical.'") Instead, "a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that [potentially] violated the law." *Williams*, 2018 WL 565718, at *2; *Butler*, 876 F.Supp.2d at 566.

For example, in *Romero*,[7] a case involving chicken processing plant employees who alleged that they were not properly compensated for time spent in pre- and post- shift activities such as donning, doffing, cleaning and sanitizing protective equipment, the court granted the

---

[7] Undersigned counsel in this matter was also class counsel in *Romero*.

plaintiff's motion for conditional certification as to all processing line employees paid on a "line time" or "gang time" basis. *Romero*, 796 F.Supp.2d. at 707. Similarly, in *Sellers*, a case involving inside sales representatives who were required to perform unpaid, off-the-clock work, the court conditionally certified a class of employees, finding that although the company argued the sales representatives were exempt from overtime, analysis of merit-based exemptions was premature and, important at the initial stage, the same timekeeping and compensation policies applied to them all. *Sellers*, 2018 WL 5631106, at *4.

Conditional certification is likewise appropriate here, where Plaintiff and the other Sales Representatives were uniformly misclassified as overtime exempt while paid on a salaried basis (despite qualifying for no overtime exemption) and subsequently, while paid on an hourly basis, were required to be work-ready prior to the beginning of their shifts and not compensated for such time as well as not paid for work performed during lunch breaks or for their necessary post-shift time worked, and paid for overtime based only on their regular hourly rate, without using nondiscretionary commissions/bonuses to determine the appropriate overtime rate. *See supra* Sections II.A-B; *see also* Dkt. 14-1. The policies and practices challenged do not vary based on Plaintiffs' specific position title or assigned team or group. *Id.*

As stated above, because discovery has not yet taken place, the inquiry at the conditional certification stage is typically based on pleadings and affidavits. *Cerrato*, 2017 WL 2983301, at *5; *see also Kerce v. West Telemarking Corp.*, 575 F.Supp.2d 1354, 1358 (S.D. Ga. 2008) ("Where a plaintiff has demonstrated a reasonable basis for the allegations of the complaint by filing declarations and consents from class members, a collective action is authorized, and notice should be issued."); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("This burden [of showing similarly situated employees exist], which is not heavy, may be met by detailed

allegations supported by affidavits.").   In this case Named Plaintiff Cirillo has submitted her declaration along with Opt-in Plaintiff Stiles, both of whom worked for Defendant as inside Sales Representatives (or in similar positions), demonstrating that Named Plaintiff Cirillo, Opt-in Plaintiff Stiles, and other Sales Representatives had similar job duties, faced similar requirements, and had the same pay structure.  *See* Dkt. 14-6, Cirillo Decl.; Dkt. 14-7, Stiles Decl.  At this stage, this evidence satisfies Plaintiff's burden of showing a common policy, scheme, or plan in violation of the FLSA, and affecting all Sales Representatives.

### C.   The Proposed Notice to Potential Opt-in Plaintiffs Is Appropriate.

Congress' purpose in authorizing § 216 (b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA.  *See Hoffman-La Roche*, 493 U.S. at 170 (describing benefits of collective action under the Age Discrimination in Employment Act).  As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Court-authorized notice also prevents "misleading communication." *Id.* at 172.

#### 1.   Named Plaintiff's Proposed Judicial Notice Is Accurate and Informative.

Attached to the instant filing, is Plaintiff's proposed judicial notice, Exhibit C, and Plaintiff's proposed opt-in form, Exhibit D.  The proposed notice describes the lawsuit, informs all individuals who have worked as inside sales representatives  for Defendant of their opportunity to "opt-in," instructs them how to "opt-in," and notifies them of the effect of their decision to "opt-in."  *See* Ex. C.  The proposed notice therefore achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted. Furthermore, the three-year notice period is appropriate at this stage, since Plaintiff has alleged

that Defendant has willfully violated the FLSA. *See* Dkt. 8, ¶ 124; *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) (certifying a class of employees over a three-year period based on plaintiffs' allegation of a willful FLSA violation); *Bobbitt v. Broadband Interactive, Inc.*, 2012 WL 1898636, at *7 (M.D. Fla. May 23, 2012) ("[p]laintiffs have alleged in their amended complaint that BBI willfully violated the FLSA. At this early stage of the proceedings, the [c]ourt concludes that [p]laintiffs' allegation is sufficient to support their request for a three-year period in the [c]ourt-authorized notice.").

2.       A Production of a List of Putative Class Members Is Necessary to Facilitate Notice.

As discussed above, all putative class members who Defendant employed since September 29, 2017 are "similarly situated" employees for FLSA purposes. *See generally* Section II.B. Disclosure of their identity to Plaintiff is accordingly necessary to provide these potential plaintiffs with notice of the action. *See Hoffmann-La Roche*, 493 U.S. at 170; *see also Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011) (ordering production of list in electronic and importable format within fourteen days). Plaintiff therefore requests that Defendant be ordered to produce the following within fifteen (15) days of the Court's Order: a list, in electronic, importable and native format (i.e., an Excel Spreadsheet is produced in its native Excel format), of all employees whom Defendant employed since May 22, 2017, including their name, job title, address, telephone number, email address, dates of employment, location of employment, date of birth, and last four digits of their Social Security number.

Courts in the Fourth Circuit have established that plaintiffs must "establish [] a need" for this type of information before it may be turned over []…the return of the notice may establish such a need." *See Byard*, 287 F.R.D. at 376; *Clark v. Williamson*, 2018 WL 1626305, at *6 (M.D.N.C. Mar. 30, 2018) (directing the employer to produce putative plaintiffs' contact

information, including email addresses and telephone numbers, to plaintiff's counsel). Here, the vast majority of employees who worked for Defendant during the relevant period may have moved since their employment with Defendant and thus further information is needed to locate them for delivery of notice. It is not uncommon for courts in this Circuit to grant this information to plaintiffs. *See Rehberg v. Flowers Foods, Inc.*, 2013 U.S. Dist. LEXIS 40337 at *7 (W.D.N.C. Mar. 22, 2013) (requiring production of names, last known addresses, telephone number, email addresses, dates of employment, job title, and last 4 digits of their Social Security number of potential opt-in plaintiffs); *see also Moss v. Senior Care Carolinas, PLLC*, 2020 WL 3472600, at *6 (W.D.N.C. June 25, 2020).

3.   Named Plaintiff Should Be Able to Send Employees the Proposed Notice Electronically, In Addition to Regular Mail.

Finally, Plaintiff proposes that the notices and opt-in consent forms be sent via First Class Mail, e-mail, and text message, as well as via radio and/or social media,[8] to all current and former call-center employees who have worked for Defendant in North Carolina within the past three years, and that the potential opt-in plaintiffs who desire to participate in this lawsuit be provided ninety (90) days from the date of mailing in which to file their consent forms. This time period is consistent with established practice under the FLSA. *See, e.g., Hoffman-LaRoche*, 493 U.S. at 169; *Kirkpatrick*, 2017 WL 3841858, at *6 ("[N]inety days is no longer than necessary to gather

---

[8]Upon information and belief, Defendant has engaged in significant layoffs at their Raleigh location, including putative plaintiffs. In light of this new information, and as Defendant has expressed concerns regarding which employees fall within the class definition, Plaintiff also requests that notice of this lawsuit be communicated via radio and social media, including Defendant's LinkedIn profile, to ensure that all similarly situated *current and former* inside sales representatives are properly notified of this lawsuit and have an opportunity to participate in this action. *See Pontones v. San Jose Rest. Inc.*, No. 5:18-CV-219-D, 2020 WL 1888984, at *1 (E.D.N.C. Apr. 8, 2020) (authorizing notice via radio announcements); *Parker v. K&L Ent., Inc.*, No. 5:20-CV-217-BO, 2020 WL 7491077, at *3 (E.D.N.C. Dec. 21, 2020) (noting "Social media has become a primary method of communication and organization for many individuals and is therefore an effective means of informing potential plaintiffs of the collective action in a timely manner" and requiring defendants to post notice on their social media pages).

the class."); *Butler*, 876 F. Supp. 2d at 575 ("Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions.") (citations omitted); *Mendoza v. Mo's Fisherman Exch., Inc.*, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) ("Defendants have not provided a persuasive basis to deviate from the standard 90-day notice period."); *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3939373, at *8 (S.D. Fla. July 12, 2013) ("Common practice provides an opt-in period of ninety days from the date of notice.").

Courts have routinely authorized the issuance of notice by e-mail. *See, e.g., Butler,* 876 F.Supp. 2d at 575 ("with regard to the use of email to notify potential plaintiffs of this litigation, communication through email is now the norm"); *Clark*, 2018 WL 1626305, at *5 ("courts have routinely approved requests for home addresses and email addresses"); *Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478, at *2 (M.D. Fla. Jan 22, 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class."); *Calder v. GGC-Baltimore, LLC*, 2013 WL 3441178, at *4 (D. Md. July 8, 2013) ("[d]efendants shall, within 14 days of the entry of this [m]emorandum and [o]rder, provide to plaintiffs' counsel the full legal name, last known residential address, and last known e-mail address of all Putative Class members."); *Alderoty v. Maxim Healthcare Servs., Inc.*, 2015 WL 5675527, at *14 (D. Md. Sept. 23, 2015) ("[I]n order to facilitate the timely transmission of the [n]otice, the [c]ourt will require [defendant] to produce the [n]otice [r]ecipients' names, mailing addresses, and e-mail addresses.").

A number of courts in recent years, including this Court, have recognized that notice by text message is an appropriate and effective way of informing employees of their right to opt in to a case under the FLSA and have approved such notice.[9] *See, e.g., Parker*, 2020 WL 7491077, at

---

[9] Notice by text message and email does not violate federal consumer protection law, as Plaintiffs willingly provided Defendant their phone numbers for purposes of receiving communications related to their

*3 (authorizing notice via text message as well as WhatsApp and WeChat); *Ferebee v. Excel Staffing Serv.*, Inc., No. 2:16-CV-8-BO, 2017 WL 1416533, at *3 (E.D.N.C. Apr. 19, 2017) ("The Court will allow notification to be sent to potential class members via text message if appropriate."); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the [c]ourt."). This has become a much more mobile society, with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete."); *Avendano v. Averus, Inc.*, No. 14-CV-01614-CMA-MJW, 2016 WL 11692088, at *2 (D. Colo. Oct. 25, 2016); *Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 26, 2016). Accordingly, notice via text message at this initial stage is preferable. *Lewis v. Precision Concepts Group, LLC*, No. 1:18-cv-00064, Doc. No. 46 (M.D.N.C. July 29, 2019) (finding "initial distribution by all of the proposed methods [including email and text message] is preferable").[10]

In addition to issuing the notice directly to putative plaintiffs, Plaintiff requests the Court order that the respective Notice and Opt-in forms be posted in a conspicuous location in the break room or other common area at Defendant's Raleigh, North Carolina, location. As North Carolina and other district courts have recognized, posting the notice is a reasonable and measured means to assuage the vagaries of notice by mail. *Diaz v. Quality Crab Co.*, No. 2:10-CV-15-H, 2011 WL

---

employment. *See* Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq.*

[10] *See also Butler,* 876 F.Supp. 2d at 575 ("with regard to the use of email to notify potential plaintiffs of this litigation, communication through email is now the norm"); *Clark*, 2018 WL 1626305, at *5 ("courts have routinely approved requests for home addresses and email addresses"); *Palma*, 2014 WL 235478, at *2 (same); *Calder*, 2013 WL 3441178, at *4 (same); *Alderoty*, 2015 WL 5675527, at *14 (same).

4498939, at *4 (E.D.N.C. Sept. 27, 2011) (granting posting of notice, in both English and Spanish, at the class members' place of employment); *Rehberg*, 2013 U.S. Dist. LEXIS 40337 at *7 (ordering defendants to post notice to prospective class members at each of its warehouses); *Enriquez v. Cherry Hill Mkt Corp.*, 2012 U.S. Dist. LEXIS 17036, at * 11 (E.D.N.Y Feb. 10, 2012) (granting posting of notice at employer's workplace.); *Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. 2011) ("[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where [putative] members will also be notified by mail.") (citing *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *4 (S.D.N.Y. 2009) (requiring defendant to "post the notice in each workplace where [putative] collective action members are employed" within ten business days of date of decision)); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile defendants object to the posting of the Notice at their business locations — and request an order prohibiting it — such a practice has been routinely approved in other cases.").

## IV.    **CONCLUSION**

Plaintiff has amply shown that notice is appropriate at this stage of the case. Accordingly, Plaintiff respectfully requests that the Court:

1.  Conditionally certify the collective under 29 U.S.C. §216 (b), defined as:

    All individuals who were, are, or will be employed by defendant or performed work for Defendant as inside sales representatives or in other similar positions in North at any time within the past three (3) years prior to the date of commencement of this action, through the date of judgment or final disposition in this action, and who were subject to defendant's timekeeping policy of only documenting scheduled shift times; subject to defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks or who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

2.  Approve the Form of the Notice and Opt-in Form attached hereto as Exhibits C and D,

respectively;

3. Order Defendant, within 15 days of this Order, to provide Plaintiff's counsel with the names, last-known mailing addresses, last-known cell phone numbers, email addresses, work locations, and dates of employment of all members of the collective; and

4. Authorize Plaintiff's counsel to distribute the Notice and Opt-in Form via first class mail, email and text message, as well as via radio and/or social media postings to all members of the conditionally certified collective, with a reminder mailing to be sent 45 days after the initial mailing to all non-responding members.

Respectfully submitted this April 2, 2021,

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2021, I electronically filed the foregoing true and accurate copy of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY THIS MATTER AS A COLLECTIVE ACTION AND FOR A COURT-AUTHORIZED NOTICE TO BE ISSUED UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document on the following:

Frederick T. Smith
North Carolina Bar No. 45229
SEYFARTH SHAW LLP
121 W. Trade Street
Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 925-6023
E-mail: fsmith@seyfarth.com

Louisa Johnson
Georgia Bar No. 391805
SEYFARTH SHAW LLP
1075 Peachtree Street, NE., Suite 2500
Atlanta, GA 30309
Telephone: (404) 888-1023
E-mail: lojohnson@seyfarth.com

*Attorneys for Defendant*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*