IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-88-BO

DANIELLE CIRILLO on behalf of herself )
and all others similarly situated, )
)
              Plaintiffs, )
)
v. )          O R D E R
)
CITRIX SYSTEMS, INC., )
)
              Defendant. )

This cause comes before the Court on plaintiff's motion to conditionally certify [DE 25], pursuant to 29 U.S.C. § 216(b), and defendant's motion for partial judgement on the pleadings [DE 37], pursuant to Federal Rule of Civil Procedure Rule 12(c). Defendant and plaintiff responded and motions are ripe for ruling. The parties have also motioned [DE 52] to lift the stay in this case. The Court will grant the request to lift the stay. For the reasons that follow, plaintiff's motion to conditionally certify [DE 25] is granted. Defendant's motion for partial judgement on the pleadings [DE 37] is granted.

## BACKGROUND

Plaintiff Danielle Cirillo was employed at Citrix Systems, Inc. ("Citrix") as an inside sales representative in Raleigh from January 2018 until her firing on January 30, 2020. Citrix has over 2,000 employees working as inside sales representatives in its Raleigh office.

Citrix currently compensates sales representatives on an hourly basis in addition to a monthly, nondiscretionary commission based on the percentage of sales obtained relative to Citrix's set quota. Citrix schedules sales representatives and those in similar roles to work eight

hour shifts, five days a week, with one hour of an unpaid lunch break each day. Workers allegedly must work between 50 and 65 hours per week to meet Citrix's expectations and make their quotas, even though workers are only scheduled for 40 hours per week. Workers accomplish this by arriving early, working late in order to cater to clients in different time zones, and by working through their lunch hour. Some sales representatives stay as much as three hours after the end of their scheduled shifts to accommodate client needs.

Plaintiff Cirillo allegedly worked through her lunch break in order to accomplish tasks set for by Citrix about three days per week. About one or two times a week, plaintiff was required to take calls around 9:00 P.M. with foreign clients that would last about one hour. During the first two weeks of each month, plaintiff allegedly typically worked two hours after her shift ended about three days a week, totaling about 50 hours per week. During the second two weeks of the month as the sales quotas neared, plaintiff allegedly worked even more. Plaintiff would work about three hours after her shift ended three days a week and work about 54 hours per week. Plaintiff alleges that Citrix, plaintiff's managers, and the human resources department were aware that work was being performed outside scheduled shift times.

When plaintiff began working at Citrix, she was a salaried employee who was overtime exempt, and Citrix did not require plaintiff to track any hours worked beyond her scheduled 40 hours. In January 2019, the human resources manager allegedly told all inside sales representatives that they would transition to being hourly employees, to begin recording time sheets. They were instructed to only document their scheduled shifts on the timesheet. Some sales representatives allegedly spoke up, emphasizing the fact that only recording the scheduled shifts would omit significant numbers of worked hours. The manager responded, "You will figure it out." First Amended Complaint ¶ 59. When Citrix transitioned the sales representatives to hourly pay, Citrix

allegedly failed to include monthly non-discretionary commissions into the rate of pay plaintiffs would receive for overtime purposes. Plaintiff alleges that Citrix structured their pay this way to intentionally evade their obligations under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA). After her transition to hourly pay, plaintiff alleges that she was not paid at least $28,936.54 for hourly work she performed outside of her shift.

Beginning in February 2019, after the transition to hourly work, plaintiff Cirillo's manager allegedly began requiring plaintiff to perform extra work and demonstrations. When plaintiff protested that she was doing extra work without compensation, the manager said that plaintiff had to do it "because I said so." First Am. Compl. ¶ 77. Plaintiff notified human resources of the friction with her manager and the human resources director allegedly notified the manager of plaintiff's concerns. This allegedly exacerbated the manager's hostile treatment of plaintiff. The manager continued to unnecessarily ridicule plaintiff, overload her with additional work, and criticize her work performance despite the fact that plaintiff was regularly one of the top five performing sales representatives in the group.

Plaintiff reported her high stress and anxiety allegedly caused by the manager to human resources multiple times. In response, human resources would require that plaintiff have a meeting with the manager and tell the manager directly the issues she was experiencing. These meetings would regularly push plaintiff to tears. The human resources director then allegedly informed plaintiff that she may need to take a leave of absence, given the physical manifestations of plaintiff's distress and emotional health concerns. The director informed plaintiff that plaintiff's pay would be reduced by 30% if she chose to take time off of work. The director did not advise or notify plaintiff of her right to take such leave under the Family Medical Leave Act. Plaintiff, allegedly not knowing of her right to take medical leave and daunted by the possibility of accepting

reduced pay, did not inquire further about taking a leave of absence. Instead, plaintiff requested to be transferred to a different team with a different manager. Citrix refused to transfer plaintiff.

In June 2019, plaintiff suffered an accident at the office that resulted in persistent knee and shoulder injuries. Plaintiff filed for workers compensation and began seeking twice weekly treatment. Plaintiff noticed increased swelling when she had to walk from her parking spot to her workstation at the Citrix office and requested accommodation to work half days from home until October 2019. Citrix approved plaintiff's request. Later, Citrix approved the extension of accommodation until February 10, 2020. Citrix allegedly did not inform plaintiff of her rights under FMLA. Plaintiff maintained the same rigorous schedule while working from home. Plaintiff's manager would allegedly repeatedly tell plaintiff that she was "taking advantage of the situation" and that Plaintiff's working from home "was a problem." *Id.* at ¶ 91.

Pursuant to plaintiff's doctor's recommendation, plaintiff requested a second extension through February 17, 2020. On January 24, 2020, Citrix approved the request except denied plaintiff's request to continue working half days. On January 30, 2020, plaintiff was terminated. Plaintiff's manager allegedly explained to other Citrix employees that plaintiff was terminated because of her injuries and her need to work from home. *Id.* at ¶ 95. Before she was terminated, plaintiff had exceeded her sales quota for January 2020 and was on track to earn a commission. Citrix has allegedly not compensated plaintiff for that earned commission.

Plaintiff initiated this case against Citrix in September 2020. In plaintiff's first amended complaint, plaintiff bring four claims. First, plaintiff brings a collective action claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq, alleging that Citrix violated the FLSA when it failed to compensate plaintiff and other similarly situated employees for work outside of their shifts. Second, plaintiff brings a class action claim, pursuant to the North Carolina and a

North Carolina Wage and Hour Act ("NCWHA"), for systematic failure to properly pay hourly employees. Third, plaintiff asserts that Citrix violated the Family Medical Leave Act ("FMLA") when it retaliated against her for attempting to take medical leave for an injury sustained at work. Fourth, plaintiff brings a wrongful discharge claim.

On April 3, 2021, plaintiff filed a motion to conditionally certify the putative FLSA collective. On June 3, 2021, defendant filed a motion for judgement on the pleadings as to the second and fourth causes of action. On January 17, 2022, the parties filed a joint motion requesting a stay, as they planned participate in non-binding mediation. Parties were not able to come to a settlement at mediation. On February 18, 2022, parties jointly moved to lift the stay.

## DISCUSSION

### I. Motion to Conditionally Certify [DE 25]

The FLSA expressly allows employees to maintain a collective action for, *inter alia*, "unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). To bring a collective action under the FLSA, the putative plaintiffs must satisfy two requirements: (1) they must establish they are "similarly situated" and (2) they must affirmatively consent to the named plaintiff's class representation. *Id.* As to the question of whether the putative plaintiffs are "similarly situated," the Court applies a two-step approach. *See Cameron-Grant v. Maxim Health Care Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003).[1]

At the first, "notice" step of the process, the Court determines whether the plaintiff and potential opt-in plaintiffs are sufficiently "similarly situated" to warrant notice being given to allow potential plaintiffs to opt-in and to proceed as a collective action through discovery; at this initial

---

[1] This Court has previously found the two-step approach to determining whether putative plaintiffs are "similarly situated" to be "rational, fair, and supported by sufficient persuasive case law" and therefore applies it here. *See Ceras-Campo v. WF P'ship*, No. 5:10-CV-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011); *see also Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351, at *2 (E.D.N.C. Apr. 27, 2016).

5

stage, a lenient standard applies. *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) ("Because the court has minimal evidence, this determination is made using a fairly lenient standard.") (internal quotation and citation omitted).

> The second step of the two-step approach has been described as follows:
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-*i.e.* the original plaintiffs-proceed to trial on their individual claims.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)).

Plaintiff has satisfied her burden at this first step to show that she, the other inside sales representatives, and other related salespeople are similarly situated and that providing notice to the potential opt-in plaintiffs is appropriate. The inquiry at this step is simply whether the members of the proposed collective are similarly situated "with respect to their allegations that the law has been violated." *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) (quotation and citation omitted). The allegations in the complaint, as well as the declaration of the plaintiff and her co-worker Sabrina Stiles, detail the common experience of the sales representatives and the impact of defendant's common plan and policies on the group. Defendant argues that the collective is too vaguely defined and not similar. The collective is sufficiently specific: persons who performed inside sales roles or others related sales roles for Citrix. The named plaintiff in this action, Ms. Cirillo, has affirmatively requested to be the collective's representation in the FLSA claim.

Plaintiff's evidence and allegations are further sufficient at this stage to support their contention that defendants engaged in a common or uniform police with regards to the putative collective action members. Conditional certification and notice to all individuals in the same job category is warranted when employers make across-the-board decisions to treat a category of employees in a manner violative of the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008); *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 215 (D. Mass. 2001); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007). Plaintiff has alleged and provided evidence of a common policy by defendant to fail to compensate employees for all work hours and to fail to provide appropriate overtime rates. This is sufficient to conditionally certify the collective action.

District courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989). Potential plaintiffs must obtain accurate and timely notice of the collective action so that they can make an informed decision whether to participate. *Id.* at 170. Plaintiff asks that the Court authorize notice by first class mail, email, and text message as well as via radio and/or social media postings to all putative plaintiffs. Plaintiff also asks for authorization to send a reminder 45-days after the initial contact to all non-responding putative plaintiffs. The Court finds that these requests are appropriate. While notice by first-class mail is sufficient in some cases, it is not sufficient in this case. Social media has become a primary method of communication and organization for many individuals and is therefore an effective means of informing potential plaintiffs of the collective action in a timely manner. *Weinstein v. 440 Corp.*, 2:10-cv-105-RWS, 2019 U.S. Dist. LEXIS 190678, at *13–14 (N.D. Ga. Nov. 4, 2019).

Accordingly, the Court has determined that plaintiffs have satisfied their step one burden and that notice pursuant to 29 U.S.C. § 216(b) should issue.

## II. Motion for Judgement on the Pleadings [DE 37]

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. FED. R. CIV. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted).

Defendant motioned for judgment on the pleadings as to plaintiff's second cause of action, violation of North Carolina Wage and Hour Act (NCWHA), and fourth cause of action, wrongful discharge in violation of North Carolina common law. Defendant argues that plaintiff's class NCWHA allegation should be dismissed pursuant to Rule 23 because it is barred due to Citrix's coverage by the FLSA. Defendant also claims that the class is too vague to survive. Plaintiff asserts

that the two claims are distinct, that the FLSA claim is for unpaid overtime and the NSWHA claim is to recoup all unpaid wages.

Under the NCWHA, North Carolina employers must pay every employee all of their wages, not including bonuses or commissions, on a regular payday. N.C. Gen. Stat. Ann. § 95-25.6. The NCWHA also requires employers to notify employees in writing at the time of hiring of promised wages, the day of payment, and to make available records of the wage policies. N.C. Gen. Stat. Ann. § 95-25.13. Plaintiff alleges that "[d]efendant's failure to pay [p]laintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6 and 95-25.13." Am. Compl. ¶ 135. "The NCWHA exempts claims for minimum wage and overtime compensation against an employer covered by the FLSA. N.C. Gen. Stat. § 95-25.14(a)(1)." *Rindfleisch v. Gentiva Health Servs., Inc.*, No. 1:10-CV-03288-SCJ, 2013 WL 12106934, at *3 (N.D. Ga. Jan. 16, 2013). Federal courts in North Carolina have routinely rejected NCWHA claims when the defendant is covered, or allegedly covered by the FLSA. *See, e.g. Spencer v. Hyde Cnty.*, 959 F.Supp. 721, 728 (E.D.N.C.1997) (citing *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166 (N.C.1992)) (explaining that "[t]he North Carolina Supreme Court has indicated that if a defendant is covered by the FLSA, it is exempt from the state statute."). *See generally Lombardozzi v. Allscripts Healthcare, LLC*, No. 5:13-CV-715-BO, 2014 WL 300798, at *2 (E.D.N.C. Jan. 27, 2014). "[I]n order to bring a claim under the NCWHA payday provision, the claim must be separate and distinct from the plaintiff's FLSA minimum wage and overtime claims." *DeHoll v. Eckerd Corp.*, No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018). Courts routinely dismiss NCWHA payday claims that rely on the very same allegations that support plaintiffs' overtime claims. *See Lima v. MH & WH, LLC*, No. 5:14-CV-896-FL, 2019 WL 2602142, at *16

(E.D.N.C. Mar. 8, 2019) (citing *DeHoll v. Eckerd Corp.*, No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018)).

Plaintiff alleges that Citrix is covered by the FLSA. Dismissal of the NCWHA claim is appropriate in this case because plaintiff alleges essentially the same factual allegations in the first, the FLSA claim, and second causes of action. Payday claims are typically based on the failure of an employer to pay employees at the designated time. Section 95-25.6 does not concern unpaid overtime wages and plaintiffs are not permitted to bring essentially the same claim twice. Plaintiff has failed to articulate a separate and distinct NCWHA claim regarding the second cause of action. The Court does not need to reach defendant's second argument, that the NCWHA claim should be dismissed because the class is unascertainable.

Plaintiff does not oppose granting judgement on the pleadings for the fourth cause of action regarding wrongful discharge. Accordingly, the motion for judgement on the pleadings is granted as to the second and fourth causes of action.

### III. Motion to Lift Stay [DE 52]

The parties previously asked the Court to enter a stay to allow parties to engage in non-binding mediation. The parties did not reach a resolution at mediation [DE 51] and have requested that the stay be lifted [DE 52]. Parties also ask that the statute of limitations for the members of the putative FLSA collective be tolled from January 3, 2022 to February 18, 2022, during which the parties were engaged in negotiations. The stay is lifted and the request to toll the statute of limitations is granted.

### CONCLUSION

Accordingly, the stay is hereby LIFTED. Plaintiff's motion to conditionally certify a collective action [DE 25] is GRANTED.

The proposed Notice of Collection Action Lawsuit [Exhibit 3, DE 26-3] and Opt-In [Exhibit D, DE 26-4] forms are APPROVED. Defendant is ORDERED to provide within fifteen (15) days to Plaintiff's counsel an updated listing of the names, last known mailing addresses, last known cell phone numbers, email addresses, work locations, and dates of employment of all putative plaintiffs who worked for defendant in North Carolina at any time during the three (3) years preceding the filing of this action and consistent with plaintiff's proposed collective notice definitions. It is further ORDERED that plaintiff shall mail to each listed putative plaintiff a copy of plaintiff's proposed notice and opt-in form, and that said notice may also be emailed and sent via text message, radio and social media consistent with plaintiff's proposed notice, which has been approved by this Court and a reminder shall be mailed 45-days after the initial mailing to all non-responding putative plaintiffs. The statute of limitations for the putative FLSA class is tolled from January 3, 2022 to February 18, 2022.

Defendant's motion for partial judgement on the pleadings [DE 37] is GRANTED.

SO ORDERED, this $\partial\!\!/$ day of March, 2022.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE