IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DANIELLE CIRILLO, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No.: 5:21-cv-00088-BO |
| CITRIX SYSTEMS, INC., | ) ) | |
| *Defendant.* | ) ) | |
| SABRINA STILES, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No.: 5:23-cv-00060-BO |
| CITRIX SYSTEMS, INC., | ) ) | |
| *Defendant.* | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF SERVICE AWARDS**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 2

III. ARGUMENT ....................................................................................................... 7

    A. The Requested Service Awards Are Reasonable and Should be Approved. .......... 7

    B. The Named Plaintiffs Assumed Significant Risks. ................................................. 9

    C. Named Plaintiffs Expended Significant Time and Effort. .................................... 11

    D. The Ultimate Recovery Supports the Requested Service Awards. ....................... 13

IV. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Alloways v. Cruise Web, Inc.*,
2019 WL 1902813 (D. Md. Apr. 29, 2019) ........................................................................ 10

*Binotti v. Duke Univ.*,
No. 1:20-CV-470, 2021 WL 5366877 (M.D.N.C. Aug. 30, 2021) ................................ 9, 13, 14

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) ............................................................................................................ 8

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) .......................................................................................... 7

*Burke v. Shapiro, Brown & Alt, LLP*,
2016 WL 2894914 (E.D. Va. May 17, 2016) ....................................................................... 7

*Chado v. Nat'l Auto Inspections, LLC*,
2020 WL 4368106 (D. Md. July 30, 2020) .......................................................................... 9

*Cilluffo v. Cent. Refrigerated Servs., Inc.*,
2018 WL 11374960 (C.D. Cal. Apr. 3, 2018) .................................................................... 13

*Darveau v. Detecon, Inc.*,
515 F.3d 334 (4th Cir. 2008) ............................................................................................. 10

*Dellinger v. Sci. Applications Int'l Corp.*,
649 F.3d 226 (4th Cir. 2011) ............................................................................................. 10

*DeWitt v. Darlington Cty., S.C.*,
2013 WL 6408371 (D.S.C. Dec. 6, 2013) ........................................................................... 9

*Erny on behalf of India Globalization Capital, Inc. v. MuKunda*,
2020 WL 3639978 (D. Md. July 6, 2020) ............................................................................ 7

*Good v. W. Virginia-Am. Water Co.*,
2017 WL 2884535 (S.D.W. Va. July 6, 2017) ................................................................... 10

*Guippone v. BH S & B Holdings, LLC*,
2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) .................................................................... 11

*Helmick v. Columbia Gas Transmission*,
2010 WL 2671506 (S.D. W. Va. July 1, 2010) .................................................................. 13

*Hoffman v. First Student, Inc.*,
2010 WL 1176641 (D. Md. Mar. 23, 2010) ......................................................................... 9

iii

*Hollis v. Valley Proteins Inc.*,
  CA No. 3:21-CV-00112-FDW-DSC (W.D.N.C. 2022) ............................................ 8

*In re DVI, Inc.*,
  2015 WL 12803587 (E.D. Pa. June 24, 2015) ................................................... 9

*In re Solodyn Antitrust Litig.*,
  2018 WL 7075881 (D. Mass. July 18, 2018) .................................................... 9

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ............................................................. 9, 13

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
  204 F. Supp. 3d 846 (D.S.C. 2016) ........................................................ 10, 12

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
  2018 WL 6718948 (M.D.N.C. Dec. 18, 2018) ............................................... 8, 9, 12

*Kruger v. Novant Health, Inc.*,
  2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................................. 10

*Leigh v. Bottling Grp., LLC*,
  2012 WL 460468 (D. Md. Feb. 10, 2012) ................................................. 8, 10, 13

*Myers v. Loomis Armored US, LLC*,
  2020 WL 1815902 (W.D.N.C. Apr. 9, 2020) .................................................. 9, 13

*Nicholes v. Combined Ins. Co. of Am.*,
  2019 WL 2575066 (S.D.W. Va. Feb. 22, 2019) ................................................. 8

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
  2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) .................................................. 11

*Reynolds v. Fid. Investments Institutional Operations Co., Inc.*,
  2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ..................................................... 8, 9

*Robinson v. Carolina First Bank NA*,
  2019 WL 2591153 (D.S.C. June 21, 2019) ..................................................... 7

*Sanchez v. Roka Akor Chicago LLC*,
  2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) .................................................. 12

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) .................................................. 9

*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) .......................................................... 12

*Tom v. Hospitality Ventures, LLC*,

iv

CA No. 5:17-CV-98-FL (E.D.N.C. 2022) ................................................................... 8

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................... 10

**Treatises**

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) .............................................................................................................. 7

# I.  **INTRODUCTION**[1]

In connection with the Unopposed Motion for Preliminary Approval in the above-captioned actions,[2] (Dkt. 96) and in light of the Court's Order denying Plaintiffs' Unopposed Motion for Service Awards without prejudice (Dkt. 105), directing Plaintiffs to file a supplemental brief addressing the Court's concerns and refile Plaintiffs' Amended Motion for Service Awards consistent with the terms of the Parties' Class and Collective Action Settlement Agreement ("Settlement Agreement"), Plaintiffs respectfully *renew* their Motion for approval of Service Awards for Named Plaintiff Danielle Cirillo ("Cirillo") and Named Plaintiff Sabrina Stiles ("Stiles") (collectively "Plaintiffs") (Dkt. 114), in recognition of the collective services they rendered on behalf of the putative Rule 23 plaintiffs in the *Stiles* and *Cirillo* matters, and those who opted into the *Cirillo* matter (together, "Class Members"), should the Court grant final approval of the proposed Settlement Agreement.[3]  As previously requested,  Plaintiffs respectfully seek approval of service awards in the following amounts:

(1) A Service Award to Named Plaintiff Danielle Cirillo in the amount of $100,000;[4] and

(2) A Service Award to Named Plaintiff Sabrina Stiles in the amount of $50,000.

Plaintiffs believe these Service Awards are reasonable in light of the anticipated benefits

---

[1] On April 18, 2023, Plaintiffs Danielle Cirillo and Sabrina Stiles filed Unopposed Motions to Consolidate Matters for purposes of settlement.  *See Cirillo et al v. Citrix Systems, Inc.*, CA No.: 5:21-cv-00088-BO; *see also Stiles et al v. Citrix Systems, Inc.*, CA No.: 5:23-cv-00060-BO. On May 12, 2023, the Court granted the motion to consolidate the actions. Dkts. 12, 94.

[2] For a detailed account of specific activities Plaintiffs engaged in prior to the filing of these actions, during the litigation, prior to and following mediation, Plaintiffs refer the Court to the supporting Amended Declaration of Gilda Adriana Hernandez and Plaintiffs' Supplemental Brief. *See* Dkts. 109, 113.

[3] Plaintiffs submit their Amended Motion to the Court for Service Awards now, while responding to the Court's concerns regarding the proposed Service Awards, so the amount of such awards will be fully known to Class Members in advance of any final fairness hearing concerning the proposed settlement. However, Plaintiffs understand the payment of such awards is contingent upon the final approval of the proposed settlement.

[4] As detailed in the Parties' Agreement, the Service Award paid to Cirillo *also* provides consideration to Cirillo for her dismissal of her FMLA claims.

1

to a class of 537 Class Members (versus a mere forty-four (44) opt-in Plaintiffs limited to only an initial FLSA collective). Such benefits were gained through Named Plaintiffs' risks, inability to find comparable work since the inception of the *Cirillo et al. v. Citrix* action,[5] and the time and effort expended in furtherance of the litigation and settlement, and the ongoing risks endured in order to vindicate their rights and the rights of Class Members.[6]

## II.    FACTUAL BACKGROUND

Named Plaintiffs have made important contributions to the prosecution and fair resolution of this action on behalf of the Class Members.[7]

Before contacting Plaintiffs' counsel, Named Plaintiff Cirillo made numerous complaints to Human Resources ("HR") and other managers while still employed with Citrix, about missing overtime pay and other potential wage violations after being informed of Defendant's reclassification of all inside salespeople from exempt salaried to hourly non-exempt. *See* Dkt. 109, Amended GAH Decl. ¶¶ 26-27. Furthermore, Cirillo spent dozens of hours asking for qualifying Family Medical Leave Act ("FMLA") leave after suffering a knee injury while working, providing documentation for her injuries, and complaining about the injuries she faced while on the job. *See id*. ¶¶ 21, 26-27. Despite repeated communications with HR, Cirillo was ultimately terminated, (which she believes was due to her repeated complaints). *See id*. ¶ 26.

Subsequently, Cirillo spent dozens of hours conducting her own extensive legal research into Defendant's pay practices, an additional fourteen (14) hours researching and contacting

---

[5] Named Plaintiff Cirillo has had four prospective employers advise her that due to her lawsuit against Citrix, (which they promptly discovered through a quick google search of Cirillo's name),they would not consider hiring her.

[6] Pursuant to the Parties' proposed Settlement Agreement, Defendant does not oppose Plaintiffs' requests for Service Awards for Named Plaintiffs.

[7] *See* Dkt. 109, Amended Decl. of Gilda Adriana Hernandez in Support of Plaintiffs' Unopposed Amended Motions for Approval of Attorneys' Fees and Service Awards; ("Amended GAH Decl."), ¶¶ 71-79.

numerous law firms, (approximately five (5) firms which turned her down), before finally speaking with Plaintiffs' counsel's firm in early August 2020 to address concerns regarding alleged unpaid wages while working for Defendant. *See id*. ¶ 26. Following weeks of preliminary discussions and legal analyses into potential claims, Plaintiffs' counsel was retained by Named Plaintiff Cirillo on September 22, 2020, and immediately after retaining Plaintiffs' counsel, Cirillo assisted in further in-depth legal and factual investigation of her claims, including conducting a thorough investigation into the merits of the potential claims and defenses. *Id.* This effort included investigation and legal research on the underlying merits of the collective and class claims, the likelihood of obtaining liquidated damages, and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of collective and class certification, proper venue, and Defendant's involvement in previous FLSA litigation and/or wage and hour investigations by government agencies. Dkt. 109, Amended GAH Decl. ¶ 26.

Plaintiffs' counsel ultimately conducted in-depth interviews with Named Plaintiff Cirillo and later Named Plaintiff Sabrina Stiles ("Named Plaintiff Stiles"), who participated as an Opt-in Plaintiff in the *Cirillo v. Citrix* Matter, to determine what activities they asserted to have engaged in throughout meal breaks, were such activities performed on or "off the clock," what paperwork they completed (if any), how long such activities took, the types of wages they received, how the compensation policies were communicated to Plaintiffs, Defendant's basis to switch Plaintiffs and those similarly situated from salary to hourly, when they were permitted to report time worked and be paid for that time, the hours that they individually worked, the number of hours they worked for which they were not paid, their rates of pay, any deductions for wages, and if so, the basis for such deductions, the wages they were paid, and other information relevant to their claims. *Id*. ¶ 27.

Following the Court's dismissal of the NCWHA claims, (Dkt. 56), Plaintiffs sought to appeal the Court's interlocutory order with the Fourth Circuit Court of Appeals, but given the order's interlocutory nature, the Fourth Circuit denied the same. *See* Dkt. 77. In other words, Named Plaintiff Cirillo, made extensive efforts to pursue an appeal, to protect not only her NCWHA claims but also the claims of those similarly situated. *See id.* Nevertheless, after an appeal of the Court's decision was no longer a viable option, opt-in Plaintiff Stiles sought to pursue her collective/class-wide action claims separately and remedy any potential defects to strengthen and solidify the distinctions between her FLSA and NCWHA along with collective/class claims on behalf the original putative Rule 23 class and FLSA collective. *See Stiles v. Citrix*, CA No:. 5:23-cv-00060-BO (E.D.N.C. Feb. 9, 2023) (Dkt. 1).

Specifically, Named Plaintiff Stiles filed her own collective/class action complaint ("*Stiles* Complaint") as a Named Plaintiff, putting herself at further risk of retaliation from current and/or prospective employers. Dkt. 109, Amended GAH Decl. ¶ 75. Indeed, Named Plaintiff Stiles had significant concerns about potential reprisals by Defendant, and she spoke with Plaintiffs' counsel for approximately five (5) hours across multiple calls about the implications of becoming a Named Plaintiff. *Id*. ¶ 76. Throughout this litigation, Plaintiffs' counsel maintained contact with Named Plaintiffs, addressing individual concerns as they arose, providing progress updates, and seeking additional information as needed. *Id*. ¶ 28.

Named Plaintiffs assisted Plaintiffs' counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties, job locations, compensation, and Defendant's recordkeeping and compensation practices and other information relevant to their claims. *Id.* ¶ 71. Additionally, from Named Plaintiffs' initial point of contact with the GAH offices, Named Plaintiffs Cirillo and Stiles provided extensive information to putative Plaintiffs

and opt-in Plaintiffs, responding to questions about the lawsuit and referring them to GAH offices, to learn more about the nature of the lawsuit, while also addressing the nature of Defendant's compensation policies and practices, hourly rates and wages promised to themselves and other sales representatives, the amount of time engaged in certain activities, in addition to, policies and practices relating to timekeeping and bonuses. *Id*. ¶ 77.

As stated above, prior to contacting Plaintiffs' counsel, Cirillo had conducted her own research into the pay practices of Defendant and the requirements of the FLSA, attempting to determine (to the best of her ability) whether she was legally entitled to overtime pay. Dkt. 109, Amended GAH Decl. ¶ 26. Furthermore, Named Plaintiffs Cirillo and Stiles provided documents prior to the filing of the lawsuit, to assist Plaintiffs' counsel in their ability to assess all underlying wage and hour claims, particularly in light of potentially applicable exemptions. *Id.* ¶ 72. Indeed, during the investigative phase of this matter, litigation, and prior to/following mediation, Named Plaintiffs Cirillo and Stiles regularly spoke with Plaintiffs' counsel in the months and weeks leading up to the filing of the *Cirillo* collective and class action complaint, as well as the *Stiles* collective and class action complaint. *Id.* ¶¶ 73-75. Plaintiffs made themselves available by phone and proactively assisted in the litigation, including by engaging in many meetings, to ensure an accurate and clear understanding of the underlying facts as well as the claims being asserted. *Id* ¶ 76. Named Plaintiffs also provided declarations early in the litigation that supported certification. *Id*. ¶ 71.

Furthermore, Named Plaintiffs made themselves available at pivotal moments in the litigation, including the Fourth Circuit appeal. Dkt. 109, Amended GAH Decl. ¶ 75. Indeed, Named Plaintiff Stiles was willing to put herself at the forefront of the litigation by not just *participating* as an opt-in Plaintiff, but by stepping up and becoming a Named Plaintiff *and* filing

a *second* Collective and Class Action Complaint, which required additional assistance and support to Plaintiffs' counsel, and placed Named Plaintiff Stiles in *further* risk of retaliation from her current employer. *Id.* Overall, Named Plaintiffs made themselves available for regular conference calls with Plaintiffs' counsel, to discuss updates in the case, litigation strategy, and provide counsel with new updates and information shared to Named Plaintiffs directly by putative class members. *Id.* ¶ 76.

At bottom, their involvement in the case was instrumental to Plaintiffs' counsel's ability to prosecute these claims, and without their hard work, effort, and risks taken, the Parties may not have been able to reach a settlement agreement at this stage. *Id.* ¶ 78. Named Plaintiffs also provided additional consideration to reach a settlement at mediation by agreeing to a general release of claims in addition to the wage and hour claims to be released by the other Class Members.

Accordingly, and consistent with the instant Amended Motion, the Notice that was sent to Class Members[8] informs them of the Service Awards that Named Plaintiffs request:

> Plaintiffs will ask the Court to award Plaintiffs Danielle Cirillo and Sabrina Stiles a total amount of $150,000 in service awards, to be divided among them pursuant to the terms in the Settlement Agreement between the parties. If allowed, the service awards requested would be paid to these individuals in addition to their regular settlement payment, for their roles as named plaintiffs prosecuting this lawsuit on the behalf of all Class Members, their assistance and support in prosecuting this case, and for the broader release of claims they will provide Citrix. The Court has not yet ruled on whether it will award these amounts. The Court may deny these requests or award less than these amounts. The Court will make a determination on the reasonableness of these requests at a later date.

*See* Dkt. 108-1, Exhibit 1, Notice Claim Form.

---

[8] *See* Dkt. 108 (Notice to the Court regarding the September 29, 2023 Mailing of the Notice and Claim Form) to all Class Members advising the Proposed Settlement Agreement between the Parties.

III.   **ARGUMENT**

   A.   **The Requested Service Awards Are Reasonable and Should be Approved.**

Though courts in the Fourth Circuit have not outlined specific factors to consider when assessing the reasonableness of a service award, courts in the Fourth Circuit acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See*, *e.g.*, *Robinson v. Carolina First Bank NA*, No. 7:18-CV-02927-JDA, 2019 WL 2591153, at \*17 (D.S.C. June 21, 2019) ("Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest."); *Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14CV201 (DJN), 2016 WL 2894914, at \*6 (E.D. Va. May 17, 2016) (noting the lack of factor test in the Fourth Circuit but quoting the common practice of considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation"); *see also Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) ("A fairly typical practice, incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."); Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Because of the importance plaintiffs bring to class actions, "an incentive award is appropriate . . . to induce an individual to participate in the suit." *See Erny on behalf of India Globalization Capital, Inc. v. MuKunda,* No. CV DKC 18-3698, 2020 WL 3639978, at \*6 (D. Md. July 6, 2020). Therefore, "[a]t the end of a successful class action, it is common for trial courts to

7

compensate class representatives for the time and effort they invested to benefit the class." *Reynolds v. Fid. Investments Institutional Operations Co., Inc.,* No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020). Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *See id.* (awarding service awards by analyzing "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."); *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-CV-10203, 2019 WL 2575066, at *4 (S.D.W. Va. Feb. 22, 2019) (acknowledging "[c]lass members would have received nothing had [p]laintiff not been willing to step up and file this [a]ction"); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *5 (M.D.N.C. Dec. 18, 2018) ("[s]ervice payments for named [p]laintiffs 'compensate [p]laintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action.'"); *Leigh v. Bottling Grp., LLC,* No. CIV.A. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012) ("[T]he policy underlying the FLSA – namely, 'to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce,' would appear to be served by providing a modest incentive to plaintiffs who take such initiative and assume such risk.") (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).

Courts in the Fourth Circuit frequently approve service awards in wage and hour class and collective actions. *See*, *e.g.*, Dkt. 101-1, *Tom v. Hospitality Ventures, LLC*, CA No. 5:17-CV-98-FL, *1-2 (E.D.N.C. 2022) (court's order granting plaintiff's motion for approval of service awards); *see also* Dkt. 101-2, *Hollis v. Valley Proteins Inc.*, CA No. 3:21-CV-00112-FDW-DSC, *14-16 (W.D.N.C. 2022) (awarding $100,000 to Named Plaintiff Hollis and $50,000 each to two

other Named Plaintiffs in service awards); *Binotti v. Duke Univ.,* No. 1:20-CV-470, 2021 WL 5366877, at *5-6 (M.D.N.C. Aug. 30, 2021); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *7 (M.D.N.C. Sept. 25, 2019) (awarding $135,000 service award to the named plaintiff); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding a $300,000 service award to each of the four named plaintiffs); *see also In re DVI, Inc.*, No. CV 03-5336, 2015 WL 12803587, at *4 (E.D. Pa. June 24, 2015) (awarding $100,000 in cost recovery and service awards to lead plaintiffs); *In re Solodyn Antitrust Litig.*, No. CV114MD2503DJC, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (awarding $90,000 in service awards to each of the class representatives); *Myers v. Loomis Armored US, LLC*, No. 318CV00532FDWDSC, 2020 WL 1815902, at *7 (W.D.N.C. Apr. 9, 2020) (awarding named plaintiff $20,000, and nine opt-in plaintiffs a total of $44,500, in service awards); *Reynolds*, 2020 WL 92092, at *4–5 (awarding $35,000 total in service awards to two named plaintiffs, and a minimum settlement payment of $2,000 to opt-in plaintiffs); *Kirkpatrick*, 2018 WL 6718948, at 6 (approving service award in FLSA action); *DeWitt v. Darlington Cty., S.C.,* No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013) (listing FLSA cases granting service awards and referring to such awards as "very common").

In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) the time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the percentage of the gross service awards to the ultimate recovery. *See Chado v. Nat'l Auto Inspections, LLC*, No. CV JKB-17-2945, 2020 WL 4368106, at *5 (D. Md. July 30, 2020); *DeWitt*, 2013 WL 6408371, at *14–15; *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010).

### B.     The Named Plaintiffs Assumed Significant Risks.

In assessing the reasonableness of service awards, courts consider the risks the class

representatives assumed in serving the interests of the class. *See Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, at \*14 (D. Md. Apr. 29, 2019) ("[I]ncentive awards to named plaintiffs may be appropriate if they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation"(quoting *Leigh*, 2012 WL 460468, at \*7)); *Good v. W. Virginia-Am. Water Co.*, No. CV 14-1374, 2017 WL 2884535, at \*30 (S.D.W. Va. July 6, 2017) (providing that service awards compensate for risks incurred); *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at \*6 (M.D.N.C. Sept. 29, 2016) ("[m]oreover, this award is appropriate given the reputational risk in bringing an action against a prominent company in [plaintiffs'] community."); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (awarding \$550,000 in total service awards to "eleven named plaintiffs, as compensation for the services they provided to the class and the inconvenience, pain, and suffering they suffered as a consequence of having been a named plaintiff in the case").

Even where there is not a record of actual retaliation, plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226, 233 (4th Cir. 2011) (explaining that FLSA litigants "often need references from past employers, they may face retaliation from new employers who learn they have challenged the labor practices of previous employers, and they sometimes must return to past employers for a variety of reasons, putting them once more at risk of retaliation") (*citing Darveau v. Detecon, Inc.*, 515 F.3d 334, 342-43 (4th Cir. 2008) (discussing risk of retaliation as a reason employees may be hesitant to bring action against employers); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (approving service awards where the plaintiffs "initially came forward with these claims, potentially placing their careers in food and beverage service at risk. Without their actions, this settlement may not have been achieved."); *Rehberg v.*

*Flowers Baking Co. of Jamestown, LLC*, No. 3:12-CV-00596-MOC, 2015 WL 1346125, at \*13 (W.D.N.C. Mar. 24, 2015) (explaining that, in granting class certification, the court was allowing class members to seek relief where they might otherwise be unable to because of fear of retaliation).

Prior to initiating the lawsuit, Named Plaintiffs believed there could be a risk of retaliation from any employer based on their participation in a lawsuit, rendering their actions in pursuing this lawsuit risky, especially with respect to the Fourth Circuit appeal, which placed Named Plaintiff Cirillo *further* in the spotlight and at risk of retaliation. Indeed, the risks assumed by Plaintiffs justify the requested service awards, which provide an important public-policy incentive to seek enforcement of the law despite these perceived dangers. *See Irvine*, 204 F. Supp. 3d at 851. Likewise, even though Named Plaintiffs were not employed by Defendant when the lawsuit commenced, Cirillo has faced retaliation from prospective employers for her involvement in the lawsuit. Indeed, both Named Plaintiffs put their ability to secure future employment at risk. *See Dellinger*, 649 F.3d at 233 (detailing the prospective repercussions employees may face for pursuing an action against a former employer); *Darveau*, 515 F.3d at 342–43 (same); *Irvine*, 204 F. Supp. 3d at 851 (stating that, in bringing an action, employees were risking their careers in an entire industry); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, at \*7 (S.D.N.Y. Oct. 28, 2011) ("[*t*]*oday, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person*.").[9]

### C.   Named Plaintiffs Expended Significant Time and Effort.

Plaintiffs respectfully request the Court grant the above service awards based on the

---

[9] As stated *supra,* Named Plaintiff Cirillo has been advised from prospective employers that they would no longer consider hiring her due to the ongoing lawsuit against Citrix. Thus, her fear of retaliation from prospective employers is real.

significant work that Named Plaintiffs performed as part of the litigation of this case. Courts recognize the important factual knowledge that plaintiffs bring to employment class actions, including information about employer policies and practices that affect wages. *See Kirkpatrick*, 2018 WL 6718948, at \*6 (noting that "without Kirkpatrick putting her name on the lawsuit and her assistance, 'it is unlikely that any recovery [to the collective] would have been as beneficial to the group.'"); *Irvine*, 204 F. Supp. at 851 (stating that if the plaintiffs did not come forward and participate in the litigation, the settlement may not have been achieved); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 690 (D. Md. 2013) (referring to plaintiff-employees in a class action as an "essential ingredient," necessitating service awards to incentivize such suits); *Sanchez v. Roka Akor Chicago LLC*, No. 14-CV-4645, 2017 WL 1425837, at \*3 (N.D. Ill. Apr. 20, 2017) (finding that the necessity for service awards for the inducement of participating in a lawsuit is "especially true in employment litigation.").

As discussed above, Named Plaintiffs contributed significant time and effort to the case. They provided detailed factual information regarding their job duties, documents, including those alleged to represent Defendant's policies, and other information relevant to their claims. Dkt. 109, Amended GAH Decl., ¶¶ 70-78. Named Plaintiffs made themselves regularly available to answer questions from Plaintiffs' counsel prior and subsequent to the motion for certification, prior to mediation, and as part of settlement negotiations with Defendant. *Id*. ¶ 76. Named Plaintiffs made themselves available at all times, including weekends, to answer phone calls from Plaintiffs' counsel and putative plaintiffs regarding their fears of retaliation. *See id.*

Specifically, Named Plaintiffs Cirillo and Stiles' involvement was critical to the representation of the class during the lawsuit. Dkt. 109, Amended GAH Decl., ¶ 78. The collective efforts of Named Plaintiffs soon thereafter directly led to Plaintiffs' counsel having enough

information to file the lawsuit and begin the process of representing the rights of collective/class opt-ins and Rule 23 class members. *Id.* Named Plaintiffs remained key contributors throughout the litigation. *Id.*

###### D. The Ultimate Recovery Supports the Requested Service Awards.

Courts within the Fourth Circuit have approved service awards similar to or greater than the awards requested here, for the Named Plaintiffs. *See Leigh v.* 2012 WL 460468 (finding that an incentive award which is less than one and one-half percent of the total settlement is appropriate given the awardee's level of involvement of the case and that no objection was made against the award) *see also Helmick v. Columbia Gas Transmission*, No. CIV.A.2:07-CV-00743, 2010 WL 2671506, at *3 (S.D. W. Va. July 1, 2010) (approving $50,000 service award in a settlement of $450,000); *see, e.g., Myers*, 2020 WL 1815902, at *7 (awarding nine opt-in plaintiffs service awards ranging from $12,500 to $2,500); *see also Cilluffo v. Cent. Refrigerated Servs., Inc.*, No. ED12CV00886VAPOPX, 2018 WL 11374960, at *8 (C.D. Cal. Apr. 3, 2018) (finding service awards that collectively total only a small percentage of the gross settlement amount to be reasonable and noting (trucker) plaintiffs face logistical challenges when coordinating deposition attendance).

The Service Awards requested here are proportionate to awards granted by courts within North Carolina and across the country. *Binotti,* 2021 WL 5366877, at *5-6; *Seaman v. Duke Univ.*, 2019 WL 4674758, at *7 (awarding $135,000 service award to the named plaintiff); *Ingram,* 200 F.R.D. at 694 (awarding a $300,000 service award to each of the four named plaintiffs); *see also In re DVI, Inc.*, 2015 WL 12803587, at *4 (awarding $100,000 in cost recovery and service awards to lead plaintiffs); *In re Solodyn Antitrust Litig.*, 2018 WL 7075881, at *2 (awarding $90,000 in service awards to each of the class representatives). For example, in *Binotti*, the court granted a service award approximately twenty times larger than each regular faculty class member's

recovery. 2021 WL 5366877, at \*5–6. The court's decision was based, in part, on the plaintiff's significant involvement in the case, which included participation in litigation strategy, settlement negotiations, and mediation. *Id*. (noting the plaintiff "put her professional career on the line when she came forward"). As in *Binotti*, Named Plaintiffs in this matter were active participants in the litigation strategy of this case, providing documentation and declarations in support of their claims and certification, and were active in assisting with significant briefing and mediation. Dkt. 109, Amended GAH Decl. ¶¶ 70-78. Moreover, Plaintiffs Cirillo and Stiles provided additional consideration to reach a settlement by agreeing to a general release of claims beyond just wage and hour claims as part of the settlement; additionally, Cirillo's service award provides consideration for the release of her FMLA claims. *See id.* ¶ 78; *see also* Dkt. 8 (Plaintiff's First Amended Collective and Class Action Complaint) at ¶¶ 139-151. Accordingly, each of the requested awards reflects the heightened contributions to the case by the proposed recipients. Thus, the Service Awards for Plaintiffs should be granted.

IV.     **CONCLUSION**

        For the reasons set forth above, Plaintiffs respectfully request the Court approve the following service awards:

    (1) A Service Award to Named Plaintiff Danielle Cirillo in the amount of $100,000; and

    (2) A Service Award to Named Plaintiff Sabrina Stiles in the amount of $50,000.

    Respectfully submitted this October 4, 2023.

                                                /s/ *Gilda A. Hernandez*
                                                Gilda A. Hernandez (NCSB No. 36812)
                                                Hannah B. Simmons (NCSB No. 59579)
                                                **THE LAW OFFICES OF GILDA A.**
                                                **HERNANDEZ, PLLC**
                                                1020 Southhill Drive, Suite 130
                                                Cary, NC 27513
                                                Tel: (919) 741-8693

                                                14

Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023, I electronically filed the foregoing true and accurate copy of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARDS** with the Court using the CM/ECF system, and have thereby electronically served the document on the following:

Frederick T. Smith
North Carolina Bar No. 45229
**SEYFARTH SHAW LLP**
121 W. Trade Street, Suite 2020
Charlotte, North Carolina 28202
(704) 925-6023
fsmith@seyfarth.com

Noah A. Finkel
**SEYFARTH SHAW LLP**
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
312-460-5913
nfinkel@seyfarth.com

Theresa M. Waugh
**SEYFARTH SHAW LLP**
975 F Street, NW
Washington, DC 20004
(704) 925-6064
twaugh@seyfarth.com
*Attorneys for Defendant*

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
*Attorneys for Plaintiffs*

16